**Ross E. FAZIO and Joan
L. Fazio, Appellants,**

v.

**The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, Luttner
Financial Group, Mark C. Donato and
Paul Shovel, Appellees.**

Superior Court of Pennsylvania.

Argued June 28, 2012.

Filed Dec. 12, 2012.

Reargument Denied Feb. 15, 2013.

---

Kenneth R. Behrend, Pittsburgh, for appellant.

James W. Gicking, Philadelphia, for Donato, appellee.

Dianne S. Wainwright, Pittsburgh and Kara E. Fay, Boston, MA, for Guardian, appellee.

Avrum Levicoff, Pittsburgh, for Luttner, appellee.

BEFORE: OLSON, WECHT and PLATT,* JJ.

OPINION BY OLSON, J.:

Appellants, Ross E. Fazio and Joan L. Fazio (the Fazios), appeal from the judgment entered on August 3, 2011 in favor of Appellees, The Guardian Life Insurance Company of America (Guardian Life), Luttner Financial Group, Mark C. Donato, and Paul Shovel (hereinafter, collectively Guardian). Upon careful consideration, we affirm.

The trial court summarized the facts of this case as follows:

In February 1994, Mr. Donato met with Mr. Fazio in Mr. Fazio's home, completed a questionnaire on Mr. Fazio's assets, debts and income and showed Mr. Fazio an illustration with $12,000[.00] per year payments into a Guardian [Life] whole life insurance policy. Mr. Fazio purchased a life insurance policy in the face amount of $838,711 that required payments of $12,-

---

* Retired Senior Judge assigned to the Superior Court.

000[.00] per year over the next thirty-five years. Mr. Donato had similar meetings with Mr. Fazio in Mr. Fazio's home during the spring and summer of 1994, 1995, 1996, and 1997 and sold Mr. Fazio two additional Guardian [Life] policies insuring his life, three Guardian [Life] policies insuring the life of his wife, [ ] Joan Fazio, and three Guardian [Life] policies insuring the lives of each of their three children. The total face amount of the three policies on Mr. Fazio's life was $3,766,086[.00], the total of the three on Ms. Fazio's life was $3,562,026[.00] and the face amounts of the children's policies were $255,689[.00], $292,804[.00], and $350,944[.00].

During the summer of 1998, Mr. Fazio began meeting with a new investment advisor named Joseph Scarpo. At that time, Mr. Fazio's business was continuing to grow and his annual personal income had increased to over $1 million. It was Mr. Scarpo's opinion that Mr. Fazio should have less expensive term life insurance and put the funds he could save by eliminating the Guardian [Life] whole life payments into investments such as bonds or mutual funds. Mr. Scarpo referred Mr. Fazio to [A]ttorney Gregory Moore. In 1999, Mr. Fazio took [A]ttorney Moore's advice and stopped paying Guardian [Life], and [A]ttorney Moore wrote a letter to Guardian [Life] alleging the Fazios had been deceived and demanding a refund of all premium payments received from them.

In June of 2001, the Fazios commenced the subject litigation by filing a [p]raecipe for [w]rit of [s]ummons. For the next nine and a half years, the dock-

et indicates that disputes concerning pleadings, discovery and summary judgment motions were primarily handled by the Honorable R. Stanton Wettick, Jr. The Fazios requested a jury trial in January of 2010, but Judge Wettick ruled they were not entitled to a trial by jury. The case was then assigned to [the Honorable Alan Hertzberg] for the non-jury trial[.]

Trial Court Opinion, 11/2/2011, at 4–5.

The trial court more specifically described the subsequent procedural history as follows:

In January of 2011, [the trial court] presided over a nine day non-jury trial in which the Fazios attempted to prove that from 1994 to 1997, [ ] Mark Donato misled them into purchasing nine Guardian [Life] life insurance policies. The Fazios could only claim [Guardian] was liable for "deceptive or unfair" conduct as it is defined in the Pennsylvania Unfair Trade Practice and Consumer Protection Law (73 P.S. §§ 201–1, et seq.), since the Fazios common law fraud, negligence and breach of fiduciary duty claims were dismissed for being filed after the applicable statute of limitations had expired. Following the trial, [the trial court] determined that the Fazios had not proven their case by a preponderance of the evidence and [the] verdict was, therefore, that [Guardian was] not liable.

*Id.* at 1–2 (record citation omitted).

Thereafter, the Fazios filed a timely motion for post-trial relief. Following argument, the trial court denied the motion on July 25, 2011. This timely appeal followed.[1]

---

1. The Fazios filed a praecipe to enter judgment on the verdict and corresponding notice of appeal on August 3, 2011. On that same day, the trial court ordered the Fazios to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Fazios complied timely on August 24, 2011. Opinions pursuant to Pa.R.A.P. 1925(a) were

The Fazios present the following issues for our review:

1. The [t]rial [c]ourt's determination that [the Fazios] were not entitled to a jury trial on their claims under the Unfair Trade Practices and Consumer Protection Law was reversible error.

2. The [t]rial [c]ourt erred in precluding testimony by Gregory Moore regarding observations he made in 1998 about the sales to the Fazios.

3. The [t]rial [c]ourt's findings that [Guardian] did not violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law [are both legally erroneous] and against the weight of the evidence.

3.a. the credible evidence demonstrates that [Guardian] misrepresented the future financial performance of the life insurance policies as retirement plans

3.b. the credible evidence demonstrates that [Guardian] misrepresented the costs and products they were selling to [the] Fazio[s]

3.c. the credible evidence demonstrates that the sales presentations lead to the likelihood of confusion and misunderstanding and/or it was deceptive to use a sales illustration that shows the premium, which is referred to as the "annual outlay," to vanish at age 60, when payments of premiums are required through age 69

3.d. the credible evidence demonstrates that [Mr.] Donato's representations that [Mr.] Fazio was making "deposits" into the life insurance policies was a material misrepresentation

4. The [t]rial [c]ourt erred in determining that [Mr.] Fazio was not justified in relying upon the representations made by [Mr.] Donato.

Fazios' Brief at 3.[2]

In their first issue presented, the Fazios argue that they had a right to a jury trial on their Unfair Trade Practices and Consumer Protection Law (UTPCPL) claims. *Id.* at 16. The Fazios concede that the plain language of the UTPCPL is silent regarding the right to a jury trial. *Id.* at 17.

The Fazios' first claim involves statutory interpretation and our scope and standard of review is well-settled:

[I]ssues involv[ing] statutory interpretation, raise a question of law, and are subject to *de novo* and plenary review. Generally, with respect to statutes, the object of all interpretation and construction is to ascertain and effectuate the intention of the General Assembly. Because the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect. Where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction. We may also assume the legislature does not intend a result that is absurd, unreasonable, or impossible of execution.

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa.Super.2012) (internal citations and quotations omitted).

Here, 73 P.S. § 201-9.2 provides for a private cause of action under the UTPCPL:

filed by both Judge Wettick and Judge Hertzberg on September 8, 2011 and November 2, 2011, respectively.

**2.** We have reordered the Fazios' arguments for ease of discussion.

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa.S.A. § 201–9.2 (footnote omitted).

As the Fazios acknowledge, the statute does not specify that a jury trial is available. The statute delineates that only the court may award damages, costs, and fees. However, the Fazios argue that the statutory language of the UTPCPL makes specific reference to the court's ability to award non-common law remedies such as treble damages and, therefore, could have specifically delineated that only bench trials were available under it. Fazios' Brief at 24. Citing our decision in *Sewak v. Lockhart*, 699 A.2d 755 (Pa.Super.1997), the Fazios contend that a jury may determine whether a UTPCPL violation occurred and an award of damages is warranted, and then the trial court decides whether treble damages are appropriate.[3] *Id.* at 29–30.

When examining a statute to determine if there is a right to a jury trial, we find guidance from the Pennsylvania Supreme Court's decision in *Mishoe v. Erie Ins. Co.*,

573 Pa. 267, 824 A.2d 1153 (2003). In that case, our Supreme Court granted allocatur to determine whether there was a right to a jury trial in a bad faith insurance action pursuant to 42 Pa.C.S.A. § 8371. Section 8371 provides, "[i]n an action arising under an insurance policy, if **the court** finds that the insurer has acted in bad faith toward the insured, **the court** may" award interest, punitive damages, and court costs and fees. 42 Pa.C.S.A. § 8371 (emphasis added). The *Mishoe* Court noted that the bad faith statute was silent regarding the right to a jury trial, but the legislature precisely chose to use the term "court" rather than "jury." *Mishoe*, 824 A.2d at 1156. Moreover, the *Mishoe* Court, determined that a cause of action for bad faith on the part of an insurer did not exist at common law or prior to the enactment of Section 8371. *Id.* at 1161.

In arriving at its decision, our Supreme Court in *Mishoe* found additional support from its earlier decision in *Wertz v. Chapman Township*, 559 Pa. 630, 741 A.2d 1272 (1999). In *Wertz*, our Supreme Court was asked to determine whether the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951–962.2, provided for the right to a jury. The *Wertz* Court,

> put substantial emphasis on the fact that the PHRA was silent regarding the right to a jury trial [and] explained, "the General Assembly is well aware of its ability to grant a jury trial in its legislative pronouncements," and therefore, we can presume that the General Assembly's express granting of trial by jury in some enactments means that it did not intend to permit for a jury trial under the PHRA. Second, [the *Wertz* Court] focused on the General Assembly's use

---

**3.** As will be discussed at length *infra*, the Fazios' reliance on *Sewak* is misplaced, as that case was superseded by statute as noted in our decision in *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, supra.*

of the term "court" in the PHRA [and] stated [it] was strong evidence that under the PHRA, it is a tribunal, rather than a jury, that is to make findings and provide relief. Finally, [our Supreme Court] considered it important to [the] statutory analysis that there was nothing in the legislative history of the PHRA to support the notion that the General Assembly intended for the PHRA to contain a right to a jury trial. *Mishoe* at 1156, citing *Wertz* at 1274.

In this case, Section 201–9.2 is silent regarding the right to a jury trial and, thus, we presume that the legislature did not intend to permit a jury trial for private causes of action under the UTPCPL. *Id.* Moreover, Section 201–9.2 specifically declares that "the court" is to determine whether treble damages are warranted and whether costs and fees should be awarded. Because the legislature specifically used the term "the court" instead of "the jury" we conclude that the plain language of Section 201–9.2 does not provide an express directive for the right to a jury trial.

 "In the absence of a statutory basis for a trial by jury, the next inquiry for a reviewing court is whether there existed the particular cause of action at the time of the adoption of the [C]onstitution, and if so, whether there existed a concomitant right to a jury trial." *Mishoe v. Erie Ins. Co.*, 762 A.2d 369, 374 (Pa.Super.2000) (citation omitted), *affirmed*, 573 Pa. 267, 824 A.2d 1153 (2003). "Only then does the court consider the third inquiry of whether there is a common law basis for the proceeding." *Id.* "The right to trial by jury was acknowledged at common law, and has traditionally been applied to cases where the injury suffered is one which was recognized at common law." *Id.* "It has long been recognized that the Pennsylvania Constitution Article 1, § 6 only preserves

the right to trial by jury in those cases where it existed at the time the Constitution was adopted." *Id.* (citation and internal quotations omitted). "Jury trials are not available in proceedings created by statute unless the proceeding has a common law basis or unless the statute expressly or impliedly so provides." *Id.* (citation omitted).

The Fazios contend that, even if the UTPCPL does not provide for a jury trial, claims under the UTPCPL are grounded in common law fraud. Fazios' at 17. Because fraud was a cause of action that existed at the time the Pennsylvania Constitution was adopted, the Fazios maintain they were entitled to a jury trial. *Id.* Citing the Pennsylvania Supreme Court decisions in *Toy v. Metropolitan Life*, 593 Pa. 20, 928 A.2d 186 (2007) and *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442 (2001), as well as this Court's subsequent decision in *Colaizzi v. Beck*, 895 A.2d 36 (Pa.Super.2006), the Fazios maintain that "a consumer must prove all elements of common law fraud to prove a fraudulent misrepresentation claim under the UTPCPL[.]" *Id.* at 22. The Fazios additionally point to the legislative history of the UTPCPL for support of their position. *Id.* at 23–24. Ultimately, the Fazios conclude, "by enacting the UTPCPL, our Legislature supplemented the existing common law remedies for fraudulent conduct, it did not create new claims." *Id.* at 22.

The UTPCPL defines 21 "[u]nfair methods of competition" and "unfair or deceptive acts or practices[,]" as follows:

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(iv) Using deceptive representations or designations of geographic origin in connection with goods or services;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(viii) Disparaging the goods, services or business of another by false or misleading representation of fact;

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;

(xiii) Promoting or engaging in any plan by which goods or services are sold to a person for a consideration and upon the further consideration that the purchaser secure or attempt to secure one or more persons likewise to join the said plan; each purchaser to be given the right to secure money, goods or services depending upon the number of persons joining the plan. In addition, promoting or engaging in any plan, commonly known as or similar to the so-called "Chain–Letter Plan" or "Pyramid Club." The terms "Chain–Letter Plan" or "Pyramid Club" mean any scheme for the disposal or distribution of property, services or anything of value whereby a participant pays valuable consideration, in whole or in part, for an opportunity to receive compensation for introducing or attempting to introduce one or more additional persons to participate in the scheme or for the opportunity to receive compensation when a person introduced by the participant introduces a new participant. As used in this subclause the term "consideration" means an investment of cash or the purchase of goods, other property, training or services, but does not include payments made for sales demonstration equipment and materials for use in making sales and not for resale furnished at no profit to any person in the program or to the company or corporation, nor does the term apply to a minimal initial payment of twenty-five dollars ($25) or less;

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

(xv) Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

(xvi) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;

(xvii) Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating:

(A) the identity of the seller;

(B) that the purpose of the call is to sell goods or services;

(C) the nature of the goods or services; and

(D) that no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion;

(xviii) Using a contract, form or any other document related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;

(xix) Soliciting any order for the sale of goods to be ordered by the buyer through the mails or by telephone unless, at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer:

(A) within that time clearly and conspicuously stated in any such solicitation; or

(B) if no time is clearly and conspicuously stated, within thirty days after receipt of a properly completed order from the buyer, provided, however, where, at the time the merchandise is ordered, the buyer applies to the seller for credit to pay for the merchandise in whole or in part, the seller shall have fifty days, rather than thirty days, to perform the actions required by this subclause;

(xx) Failing to inform the purchaser of a new motor vehicle offered for sale at retail by a motor vehicle dealer of the following:

(A) that any rustproofing of the new motor vehicle offered by the motor vehicle dealer is optional;

(B) that the new motor vehicle has been rustproofed by the manufacturer and the nature and extent, if any, of the manufacturer's warranty which is applicable to that rustproofing;

The requirements of this subclause shall not be applicable and a motor vehicle dealer shall have no duty to inform if the motor vehicle dealer rustproofed a new motor vehicle before offering it for sale to that purchaser, provided that the dealer shall inform the purchaser whenever dealer rustproofing has an effect on any manufacturer's warranty applicable to the vehicle. This subclause shall not apply to any new motor vehicle which has been rustproofed by a motor vehicle dealer prior to the effective date of this subclause.

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa.S.A. § 201–2(4).

Here, the Fazios rely on "[t]he use of the word 'other' by the Legislature in Sub-

section (xxi) ... to mean that all prior twenty subsections constitute a like kind and character of 'other fraudulent' conduct[;] [t]herefore, all twenty-one of the subsections are based in fraudulent conduct." Fazios' Brief at 20.

This Court recently summarized the evolving jurisprudence of private causes of action under the UTPCPL and rejected the notion that all unfair trade practice claims are based in fraud:

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice. Upon a finding of liability, the court has the discretion to award up to three times the actual damages sustained and provide any additional relief the court deems proper. Section 201–2(4) lists twenty enumerated practices which constitute actionable unfair methods of competition or unfair or deceptive acts or practices. The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add "deceptive conduct" as a prohibited practice. The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a like-

lihood of confusion or of misunderstanding."

Pre-amendment decisions from this Court relied on the plain language of the UTPCPL to hold proof of common law fraud was necessary to state a claim under the catchall provision. After the UTPCPL was amended, however, this Court continued to refer to case law citing the pre-amendment version that required a plaintiff to prove common law fraud to recover under the UTPCPL catchall provision. *See Ross v. Foremost Ins. Co.,* 998 A.2d 648 (Pa.Super.2010) (stating catchall section requires proof of common law fraud); *Colaizzi v. Beck,* 895 A.2d 36 (Pa.Super.2006) (stating same); *Booze v. Allstate Ins. Co.,* 750 A.2d 877 (Pa.Super.2000), *appeal denied,* 564 Pa. 722, 766 A.2d 1242 (2000) (stating same); *Skurnowicz* [*v. Lucci,* 798 A.2d 788 (Pa.Super.2002) ] (stating same). Despite the addition of language regarding deceptive conduct, the post-amendment cases do not discuss the 1996 amendment in any detail, or consider what effect it might have on the catchall provision.

Conversely, a line of cases from the Commonwealth Court have distinguished *Skurnowicz* and its progeny, and in effect questioned the soundness of those cases as applied to post-amendment catchall claims. *Commonwealth v. Percudani,* 825 A.2d 743, 746–47 (Pa.Cmwlth.2003) (holding 1996 Amendment to Section 201–2(4)(xxi) provides liability for deceptive conduct). *Percudani* examined both the text and legislative history of Section 201–2(4)(xxi) before holding the 1996 addition of "deceptive conduct" changed the standard for the catchall provision. In light of the legislative changes, *Percudani* concluded any decision to retain the pre–1996 pleading

standards for Section 201–2(4)(xxi) would render the words "deceptive conduct" superfluous and run contrary both to the rules of statutory construction and our Supreme Court's directive for liberal construction of the UTPCPL. *Id.* (stating we can presume legislature intended to avoid mere surplusage, and courts should give effect to all language within statute whenever possible). The Commonwealth Court cases view the 1996 addition of "deceptive conduct" as substantively altering the catchall provision and allowing for liability based on the less restrictive standard of "deceptive conduct." *Com. ex rel. Corbett v. Manson,* 903 A.2d 69, 74 (Pa.Cmwlth. 2006) (permitting catchall liability for deceptive conduct and rejecting Superior Court's continued interpretation of Section 201–2(4)(xxi) as requiring proof of common law fraud). *See also Commonwealth v. TAP Pharmaceutical Products, Inc.,* 36 A.3d 1197 (Pa. Cmwlth.2011) (stating Commonwealth Court has adopted "deceptive" standard under post-amendment catchall section of UTPCPL because language of 1996 amendment signaled approval of less restrictive pleading requirements); *Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC,* 995 A.2d 422, 433 n. 28 (Pa.Cmwlth.2010) (applying "deceptive" standard for catchall provision and outlining split in interpretations of statute by Commonwealth and Superior Courts). In rejecting this Court's post-amendment interpretation of the catchall provision, the Commonwealth Court found *Skurnowicz* inapplicable to post-amendment cases because *Skurnowicz* did not acknowledge the 1996 amendment and relied on pre-amendment case law to hold the catchall section required proof of common law fraud. *Percudani, supra.*

Most Pennsylvania federal courts have similarly concluded the 1996 amendment lessened the degree of proof required under the UTPCPL catchall provision. *See Schnell v. Bank of New York Mellon,* 828 F.Supp.2d 798, 2011 WL 5865966 (E.D.Pa.2011) (stating deceptive conduct is sufficient to satisfy catchall provision); *Vassalotti v. Wells Fargo Bank, N.A.,* 732 F.Supp.2d 503, 510 n. 7 (E.D.Pa.2010) (noting Pennsylvania law is not entirely clear on issue but "courts in this district have held that the 1996 amendment to the catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits plaintiffs to proceed without satisfying all of the elements of common-law fraud"); *Wilson v. Parisi,* 549 F.Supp.2d 637 (M.D.Pa.2008) (accepting view that plaintiff can state claim under post–1996 catchall provision by alleging deceptive activity). The federal decisions have noted Pennsylvania law regarding the standard of liability under the UTPCPL catchall is "in flux," but predict that our Supreme Court would adopt an interpretation of the catchall provision that recognized the 1996 amendment made proof of common law fraud unnecessary in cases where a plaintiff alleges deceptive conduct. *Chiles v. Ameriquest Mortg. Co.,* 551 F.Supp.2d 393, 398–99 (E.D.Pa.2008). Like the Commonwealth Court, the federal courts examining this issue were persuaded by the revised statutory language of the catchall provision and our Supreme Court's directive to read the UTPCPL broadly. *Seldon v. Home Loan Services, Inc.,* 647 F.Supp.2d 451, 469 (E.D.Pa.2009). *Accord Genter v. Allstate Property and Cas. Ins. Co.,* 2011 WL 2533075 (W.D.Pa. June 24, 2011) (observing amendment to catchall provision adding

prohibition of deceptive conduct allows plaintiff to succeed under catchall section by pleading either common law fraud or deceptive conduct); *Haines v. State Auto Property and Cas. Ins. Co.,* 2009 WL 1767534 (E.D.Pa.2009) (outlining split in Pennsylvania law and assuming without deciding that plaintiff can establish catchall violation on "less than fraudulent conduct"); *Flores v. Shapiro & Kreisman,* 246 F.Supp.2d 427 (E.D.Pa.2002) (concluding proof of fraud was unnecessary because plaintiff alleged defendants' conduct was deceptive); *In re Patterson,* 263 B.R. 82 (Bankr.E.D.Pa.2001) (commenting court will not ignore amendment and addition of "deceptive conduct" because doing so would ignore legislative intent and make revised language redundant). *But see Rock v. Voshell,* 397 F.Supp.2d 616, 622 (E.D.Pa.2005) (noting uncertainty over requirements for UTPCPL catchall claim, *citing Booze* for proposition that plaintiffs still must prove common law fraud); *Piper v. American Nat. Life Ins. Co. of Texas,* 228 F.Supp.2d 553, 560 (M.D.Pa.2002) (relying on *Prime Meats, Inc.* [*v. Yochim,* 422 Pa.Super. 460, 619 A.2d 769 (1993)] as authority that Pennsylvania law requires proof of common law fraud to state claim under catchall provision). More often, federal decisions decline to follow this Court's post-Amendment precedent because the Superior Court cases relied on pre-amendment interpretations of the catchall section without acknowledging the 1996 amendment. *Seldon, supra* at 469 (choosing not to follow Superior Court view of post-amendment catchall section because court's case law did not discuss or recognize changes to law, specifically addition of "deceptive conduct" to statute); *Cohen v. Chicago Title Ins. Co.,* 242 F.R.D. 295 (E.D.Pa.2007) (rejecting post-amendment cases from Superior Court because they rely on authority that interpreted pre-amendment catchall provision).

＊　　＊　　＊

Notwithstanding prior case law on the catchall provision, our review of decisions from the Commonwealth Court, the federal courts interpreting Pennsylvania law, as well as the statutory language of the post-amendment catchall provision leads us to conclude the court's jury instruction regarding "misleading" conduct accurately set forth the standard of liability under the amended catchall provision.

A contrary reading that adheres to the common law fraud requirement for cases arising under the post-amendment catchall provision ignores the textual changes of the 1996 amendment as well as the rules of statutory construction. Prior to 1996, the catchall section prohibited only "fraudulent conduct." The legislature's inclusion of "deceptive" in 1996 signaled that either fraudulent or deceptive conduct would constitute a catchall violation. The amendment also implied that deceptive conduct is something different from fraudulent conduct. Moreover, maintaining a standard that demands fraud even after the amendment would render the legislature's addition of "deceptive" redundant and meaningless in a manner inconsistent with well-established principles of statutory interpretation. Overlooking the addition of "deceptive" would also neglect our Supreme Court's pronouncement that courts should liberally construe the UTPCPL. For these reasons, we hold deceptive conduct which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim under Section 201–2(4)(xxi).

This Court's post-amendment decisions in *Ross, Colaizzi,* and *Skurnowicz* are

distinguishable. Those cases may have arisen after the 1996 amendment and involved the post-amendment version of the catchall provision, but each case relies on a pre-amendment interpretation of the catchall section. For example, *Ross* cites *Skurnowicz* and *Sewak* [ ] when stating the UTPCPL catchall provision requires proof of fraud. *See Ross, supra* at 654. *Colaizzi* and *Skurnowicz* also cite *Sewak* for the same proposition. *See Colaizzi, supra* at 39; *Skurnowicz, supra* at 794. The *Sewak* plaintiffs, however, filed their claim in 1994—before the legislature amended the catchall provision. Therefore, *Sewak* examined the pre–1996 version of the UTPCPL, which required proof of fraudulent conduct; that version is inapplicable to cases involving the post-amendment catchall provision. *Sewak, supra* at 761 (stating common law fraud is required to set forth claim under previous and now suspended Section 201–2(4)(xvii)). The citations to *Sewak* in *Ross, Colaizzi* and *Skurnowicz* would not be problematic if those cases had recognized the 1996 amendment, noted the new language, and addressed whether and in what way the addition of "deceptive conduct" affected the catchall provision. Those cases, however, merely refer to *Sewak* (either directly or indirectly) without discussing or even acknowledging the amended provision. Consequently, *Ross, Colaizzi,* and *Skurnowicz* are not binding to the extent they purport to interpret the post-amendment catchall provision of the UTPCPL.

*Booze* is the lone post–1996 case from this Court that arguably mentioned the amendment, but that case is likewise inapposite to the present case. In a footnote, *Booze* observed that the catchall provision was changed by legislative amendment to include "not only 'fraudu-

lent' but 'deceptive' conduct as well." *Booze, supra* at 880 n. 6. *Booze* nevertheless stated proof of common law fraud was required to succeed under the catchall provision, citing the pre-amendment case of *Hammer v. Nikol,* 659 A.2d 617 (Pa.Cmwlth.1995). The court ultimately concluded "appellants have failed to state a cause of action under Section 201–2(4)(xvii)." *Id.* Significantly, *Booze* relied on a pre-amendment case (*Hammer*) and based its holding on Section 201–2(4)(xvii), the pre–1996 version of the catchall provision. *Id. Booze,* therefore, appears to have interpreted the pre-amendment catchall provision; its acknowledgement of the 1996 amendment was merely a comment on a change in the law, albeit one that did not affect that disposition. *Id. See also Weiler v. SmithKline Beecham Corp.,* 53 Pa. D. & C.4th 449 (2001) (Herron, J.) (holding 1996 amendment altered catchall provision to allow for violations based on deceptive conduct, distinguishing *Booze* because its conclusion was based on pre-amendment version of catchall section). We conclude *Booze* does not control the outcome of the present case either.

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,* 40 A.3d at 151–155 (some internal citations and quotations omitted; all footnotes omitted) (emphasis in original).

Curiously, the *Bennett* Court was tasked with determining whether "the [trial] court correctly **instructed the jury** on the relevant standard for the UTPCPL catchall provision when it stated 'misleading conduct' could support a violation." *Id.* at 147 (emphasis added). In that case, the plaintiffs brought an action for breach of contract, breach of warranty, and UTPCPL violations. The plaintiffs' right to a jury trial under the UTPCPL was not squarely

before the *Bennett* Court, because the plaintiffs' common law claims remained pending at the time of trial. By contrast, in this case, the statute of limitations barred the Fazios' common law claims. As such, only their UTPCPL claim remained viable when their trial commenced.

We also reject the Fazios' reliance on *Toy v. Metropolitan Life*, 593 Pa. 20, 928 A.2d 186 (2007) for the proposition that UTPCPL claims are solely grounded in common law fraud. The Pennsylvania Supreme Court in *Toy:*

> rejected [this] Court's conclusion that the Consumer Protection Law did not require plaintiffs to prove the traditional elements of common law fraud in all of their claims. [The Court] determined that the Superior Court's view of the Consumer Protection Law, which the court had previously articulated in *Di-Lucido [v. Terminix International, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237 (1996)]* was erroneous because it was premised on the considerations that guide the Attorney General when he is pursuing an enforcement action. Construing the language in 73 P.S. § 201–9.2, which provides for a private right of action, and differentiating it from the language in 73 P.S. § 201–4, which authorizes Commonwealth officials to act in the public interest, [the Pennsylvania Supreme Court] reiterated that the Consumer Protection Law's underlying foundation is fraud prevention, and held that nothing in the legislative history of the Consumer Protection Law suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation. Accordingly, [the Supreme Court] concluded that all of the plaintiffs' claims incorporated the traditional elements of common law fraud of reliance and causation.

> Moreover, [prior case law] necessarily states that a plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance. Therefore, [the Pennsylvania Supreme Court held] that justifiable reliance is an element of [ ] Consumer Protection Law claims.

*Toy* at 202–203.

▮ While it is true that our Supreme Court concluded that a consumer must demonstrate the elements of fraud to prove a violation of the UTPCPL, the Fazios' overlook the fact that a plaintiff bears the burden of proving additional elements to maintain a cause of action under the UTPCPL. This Court has explained:

> The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. It is to be liberally construed in order to effectuate its purpose. [ ... ] In order for a private individual to bring a cause of action, that individual must first establish the following: 1) that he or she is a purchaser or lessee; 2) that the transaction is dealing with "goods or services"; 3) that the good or service was primarily for personal, family, or household purposes; and 4) that he or she suffered damages arising from the purchase or lease of goods or services.

> In order to prevail under the UTPCPL, a plaintiff must then prove the following: 1) the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices, and 2) the transaction between plaintiff and defendant constituted "trade or commerce" within the meaning of the UTPCPL.

*Keller v. Volkswagen of Am., Inc.,* 733 A.2d 642, 646–647 (Pa.Super.1999) (citations and footnotes omitted).

Accordingly, while the Fazios were required to prove the common law elements of fraud to support their UTPCPL claim

(or alternatively, deceptive conduct for purposes of stating a catchall UTPCPL claim under the 1996 amendments), they were also required to prove other elements, as well. As the foregoing quote makes clear, the Fazios needed to establish a consumer transaction in order to fall under the auspices of the UTPCPL. This additional burden takes the claim outside of the realm of common law fraud. The UTPCPL is to be construed broadly and was designed to protect consumers from unscrupulous business practices. Such a unique, statutory remedy was not available under the common law.

█ "In addition, the remedies of the UTPCPL are not exclusive, but are in addition to other causes of action." *Wallace v. Pastore*, 742 A.2d 1090, 1093 (Pa.Super.1999). In *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987), our Court was called upon to determine the applicable statute of limitations for private UTPCPL causes of action. In *Gabriel*, the trial court, unsure of the statute of limitations for the UTPCPL, applied a statute of limitations by looking at the underlying causes alleged. Therein, we noted:

> The analysis employed [ ] by the lower court in the case at bar in selecting a statute of limitations for the UTPCPL involved application of the most closely analogous limitations period. This approach, however, yielded inconsistent determinations. We believe that this result is directly attributable to the *sui generis* nature of the Unfair Trade Practices and Consumer Protection Law since the statute encompasses an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty. Consequently, the use of the standard employed by the trial court in the case at bar to select a

limitations period threatens a multiplicity of potentially applicable statutes of repose for UTPCPL actions. Plaintiffs would be uncertain as to which limitations period governed their UTPCPL claim until the court determined whether their claim more closely resembled a tort action, a contract action, or an action under some other statute. A uniform statute of limitations for the UTPCPL is required to preclude such uncertainty and inconsistency. Appellants contend that, there being no express limitation on private actions under the UTPCPL, and since their claims fall within the ambit of that statute, the six-year "catchall" limitations period of section 5527(6) of the Judicial Code, 42 Pa.C.S. § 5527(6), applies. We agree for the reasons that follow.

The Pennsylvania legislature in 1976 enacted a new, all-inclusive limitation of actions statute. 42 Pa.C.S. § 5522–5527. This new statute, however, contained no express limitation on actions for fraud and deceit. In 1982, the legislature amended the Judicial Code to provide a two-year limitation period specifically for fraud and deceit actions. *Id.* § 5524(7). This amendment applies only to causes of action accruing after its effective date in February, 1983. Act No. 326, 1982 Pa.Laws 1409, 1440. Thus, the statute of limitations for fraud and deceit claims cannot apply to the instant case[,] as the court below incorrectly held[,] because appellants' cause of action accrued in 1980, almost three years before the effective date of the two-year period of limitations for fraud actions. Even if we were to conclude that all actions brought pursuant to the UTPCPL sounded in deceit or fraud, what with appellants' additional claims under UTPCPL[, we would hold that] the six-year "catchall" limitation of section 5527(6) would be applicable. As we

previously noted, the Unfair Trade Practices and Consumer Protection Law embraces actionable conduct which sounds in assumpsit as well as trespass and which parallel actions upon contracts as well as those arising in tort. We are unable, therefore, to characterize all the multifarious claims that may be brought under the UTPCPL as "fraud" or "deceit." Instead, **the UTPCPL creates a civil action which is separate and distinct from appellants' other causes of action** and for which the legislature provided no limitations period. The language of section 5527(6) of the Judicial Code, however, is clear and unambiguous as to what period of limitation shall apply in such instances: "Any civil action or proceeding which is neither subject to another limitation specified in this subchapter *nor* excluded from the application of a period of limitation [must be commenced within six years]." 42 Pa.C.S. § 5527(6) (emphasis added). Since section 201–9.2 of the UTPCPL provides for a civil action which is not subject to a limitations period, the Unfair Trade Practices and Consumer Protection Law is subject to the six-year "catchall" statute of limitations.

*Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 494–495 (1987) (footnotes omitted) (emphasis added).

In this case, the Fazios concede that their common law fraud claim was barred by the applicable statute of limitations. They were allowed to proceed on their UTPCPL claim because the six-year statute of limitations had yet to expire. The facts of this case, read in conjunction with *Gabriel,* thus demonstrate that the causes of action for fraud and unfair trade practices are wholly separate and legally distinct. Because Pennsylvania cases distinguish between common law fraud and claims brought pursuant to the UTPCPL, for purposes of defining the requisite ele-

ments of recovery and fixing the appropriate limitations period, we cannot engraft the right to a jury trial inherent in a common law fraud claim onto an action under the UTPCPL, as the Fazios ask us to do.

■ Finally, we note that three different judges on the Court of Common Pleas have issued four published opinions determining that there is no right to a jury trial in private causes of action pursuant to Section 201–9.2 of the UTPCPL. Judge Wettick, who ruled on the Fazios' demand for a jury trial, based his decision on his prior opinion in *Ihnat v. Pover,* 2003 WL 22319459 (CCP Allegheny County 2003). *Ihnat* cited three other cases: *Greiner v. Erie Insurance Exchange,* 2000 WL 33711041 (CCP Philadelphia 2003); *Commonwealth v. BASF,* 2001 WL 1807788 (CCP Philadelphia 2001); and, *Oppenheimer v. York International,* 2002 WL 31409949 (CCP Philadelphia 2002). "We recognize that decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." *Hirsch v. EPL Techs., Inc.,* 910 A.2d 84, 89 n. 6 (Pa.Super.2006). We have examined those cases, found no analytical error, and consider them additional persuasive authority.

■ Accordingly, we conclude that there is no right to a jury trial for private causes of action under the UTPCPL. The statute does not specifically enumerate that right. Moreover, based upon the foregoing analysis, we find that the UTPCPL did not merely codify common law claims of fraud. The UTPCPL created a distinct cause of action for consumer protection. While a plaintiff is required to prove elements of common law fraud to support certain UTPCPL claims, he/or she would still have to prove the elements of a consumer-based transaction or relation-

ship. Moreover, fraud and UTPCPL claims have different statutes of limitations, which provides further support that such claims are separate causes of action. In sum, the Fazios were not entitled to a jury trial on their stand-alone UTPCPL claim; hence, their first issue on appeal fails.

■ In their next issue, the Fazios assert that the trial court erred in precluding from evidence letters and testimony from Gregory Moore, a licensed insurance agent and attorney. Fazios' Brief at 66. They contend that the trial court erred when it "specifically limited Moore's testimony to a recitation of the actions which Mr. Moore instructed the Fazios to take without providing Moore an opportunity to explain what his opinions were as to why such actions were necessary." *Id.* at 67. The Fazios argue that Attorney Moore was a branch manager for MetLife and "using his life insurance agent training and experience uncovered the use of deceptive sales tactics in the sales of the nine policies [at issue]." *Id.* at 70. In the alternative, citing *Ganster v. Western Pennsylvania Water Company*, 349 Pa.Super. 561, 504 A.2d 186 (1985), the Fazios contend that the letters sent to Guardian by Attorney Moore on the Fazios' behalf were admissible as business records. *Id.* at 68–70.

"We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion." *Commonwealth v. Johnson*, —— Pa. ——, 42 A.3d 1017, 1037–1038 (2012). Here, the Fazios do not dispute that they did not designate Attorney Moore as an expert prior to trial. *See* N.T., vol. I, 1/11/2011, at 57. Pennsylvania Rule of Evidence 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness,

helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, **and not based on scientific, technical, or other specialized knowledge[.]**" Pa.R.E. 701 (emphasis added). Because the Fazios asked Attorney Moore to testify as to why he believed Guardian engaged in unfair trade practices, based upon his specialized knowledge of the insurance industry, the trial court properly limited the evidence. To the extent the Fazios offered Attorney Moore's letters for the same purpose, the letters from Attorney Moore to Guardian were excludable for similar reasons. Thus, we discern no abuse of discretion.

■ Moreover, we conclude that the Fazios have waived their argument pertaining to the business records exception. The Fazios never asserted this claim before the trial court during argument on Guardian's motion *in limine* to preclude the proffered evidence. *See* N.T., vol. I and III, 1/11/2011, at 52–61 and 809–812. The Fazios did not invoke the business records exception in their Pa.R.A.P. 1925(b) statement. Issues may not be raised for the first time on appeal. Pa. R.A.P. 302(a). Thus, we will not review this aspect of the Fazios' argument. As such, the Fazios' second issue fails.

■ In their third issue presented, the Fazios contend that the material evidence of record did not support the trial court's determination that Guardian did not make misrepresentations. Fazios' Brief at 31. The Fazios argue that Mr. Donato used "double accounting" on worksheets and tables "to falsely inflate the amount of return and persuade [Mr.] Fazio to invest in [Mr.] Donato's proposal." *Fazios' Brief* at 33, 34–41. They maintain that Guardian sold the subject policies as savings plans for retirement and misrepresented the reasonableness of attaining the future net cash value. *Id.* at 41–53. The Fazios

assert that the evidence presented demonstrated Guardian misrepresented the costs of the products sold. *Id.* at 53–55. They further aver that Guardian used deceptive, confusing, or misleading sales illustrations to show "vanishing" premiums, despite the requirement of continuing payments. *Id.* at 55–57. They contend that Guardian made material misrepresentations that life insurance premiums were actually deposits. *Id.* at 57–60.

Where, as here, the appellant asserts the weight of the evidence as grounds for the award of a new trial, our review is exceptionally limited:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 615 (Pa.Super.2009). "It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder." *Lebanon County Hous. Auth. v. Landeck*, 967 A.2d 1009, 1012 (Pa.Super.2009). "Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." *Id.*

The trial court determined the illustrations used by Guardian were not misleading or deceptive because Mr. Donato explained that premiums were due for 35 years. Trial Court Opinion, 11/12/2011, at 6–7. The trial court determined that on this aspect of the Fazios' claim, "Mr. Fazio was not credible[;] Mr. Donato, credibly testified that he explained to Mr. Fazio that premiums are required until age 69[,] but they could be paid out of the policy at age 60 or 65." *Id.* at 7. The trial court also determined that Mr. Donato credibly testified that he explained to Mr. Fazio that dividend amounts were not guaranteed. *Id.* at 7–8. The trial court further concluded that the Fazios failed to prove that they could not achieve the cash values presented by Guardian if they continued to pay the premiums. *Id.* at 9. The trial court "was not convinced by the testimony [or evidence of record] that taxes or lost opportunity were accounted twice." *Id.* at 10. Further, the trial court found no deception with the use of the term "vanishing premium" as said term was not prohibited by Pennsylvania law at the time of the agreements. *Id.* at 11. The trial court determined that it was not misleading for Mr. Donato to refer to life insurance as functioning like a bank and that Mr. Donato repeatedly referred to payments as "premiums" despite occasionally stating they were "deposits." *Id.*

After independent review, we conclude that the trial court had a reasonable basis to find that the Fazios did not meet their burden of proving a cause of action under the UTPCPL. Here, we find no abuse of its discretion. In essence, the Fazios ask this Court to reweigh the evidence, and usurp the trial court's credibility determinations, in their favor. Based on our stan-

dard of review, we cannot. Thus, the Fazios' third issue fails.

In their last issue presented, the Fazios contend that "[i]f this Court should find that there are competent facts of [r]ecord supporting a finding of fraudulent misrepresentations, then, it should also find that the trial court misapplied the law on reliance in a fraud case, since reliance is presumed where there is a material misrepresentation." Fazios' Brief at 65. Because we have previously determined that the Fazios failed to prove their claim, the Fazios' reliance is irrelevant and we need not reach this issue.

■■■■■ Finally, we must address a motion filed in this Court by counsel for Mark Donato. On February 29, 2012, Mr. Donato's counsel filed a suggestion of death/request for leave to appoint representative. In said filing, it is asserted that Mr. Donato died after the entry of judgment, but before a notice of appeal was filed. Hence, counsel requests "that this Court authorize raising an estate/appointment of a representative for Mr. Donato for the limited purpose of participating in this appeal and any post-appeal activities, or otherwise direct the parties as to how they should proceed." We decline this request. "The Orphans' Court has exclusive jurisdiction of decedents' estates, of testamentary fiduciaries and their control, removal, discharge and surcharge and, of course, their administration and their accounts, and also of certain enumerated *inter vivos* trusts and, under certain circumstances, the title to personal property." *In re Freihofer's Estate*, 405 Pa. 165, 174 A.2d 282, 283 (1961). Pursuant to 20 Pa.C.S.A. § 3155, the register of wills may appoint a personal representative to open an estate. Because we lack jurisdiction to appoint a personal representative, we deny without prejudice the suggestion of death/request for leave to appoint representative.

Judgment affirmed. Suggestion of death/request for leave to appoint representative denied without prejudice to parties' right to take such further action as appropriate by law.