**LEBANON COUNTY HOUSING AUTHORITY, Appellee**

v.

**Veronica LANDECK, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 2008.
Filed Feb. 27, 2009.

---

Howard D. Miskey, Lebanon, for appellant.

Donna L. Brightbill, Lebanon, for appellee.

BEFORE: PANELLA, CLELAND, JJ. and McEWEN, P.J.E.

OPINION BY CLELAND, J.:

¶ 1 Veronica Landeck (Tenant)[1] appeals the judgment entered January 31, 2008 pursuant to the trial court's orders of December 4, 2007 and December 13, 2007, the latter denying Tenant's post-trial motion. The issue before us is whether, under the federal Fair Housing Act[2] (the Act), the trial court mistakenly concluded that Tenant failed to establish a reasonable accommodation defense under the Act and thereby erred in awarding possession of the rental property to the Lebanon County Housing Authority (the Authority).[3] Because the trial court erred in its application of the law and its factual findings are not supported by the record, we reverse and remand in part for a new trial.

¶ 2 "To establish a reasonable accommodation defense under the Fair Housing Act, the tenant must demonstrate that (1) she suffered from a 'handicap'[[4]] (or 'disability'), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation." *Douglas v. Kriegsfeld Corporation*, 884 A.2d 1109, 1129 (D.C.2005).[5]

¶ 3 Our standard of review is as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion."

*Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 413–414 (Pa.Super.2004) (citations and quotation marks omitted).

¶ 4 An abbreviated procedural and factual history is as follows: On January 29, 1997, Tenant and her late husband en-

---

1. Tenant's counsel inappropriately attached exhibits to his brief after the trial court specifically held the exhibits were not admissible. This court is not a fact-finding court, and attempting to present facts to this Court which were prohibited by the court below is improper. *See* Pa.R.A.P. 1921.

2. 42 U.S.C.A. §§ 3601–3619.

3. On Tenant's motion, the trial court stayed the eviction pending this appeal. The trial court further required Tenant's monthly rent be paid when due and she strictly comply with the lease agreement, or the stay could be revoked. Order, 1/21/2008. (The order is dated 1/21/2008, but filed 1/18/2008.)

4. The Act defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment...." 42 U.S.C.A. § 3602(h). Depression can be a handicap under the Act. *See U.S. v. McIntyre*, 304 F.Supp. 1244 (1969).

5. Because no binding Pennsylvania authority governs this appeal, this Court looks to *Douglas v. Kriegsfeld Corporation*, 884 A.2d 1109 (D.C.2005). The trial court applied the five-prong test set forth in *Douglas*, and we also adopt its application.

tered into a lease agreement with the Authority. N.T., 5/14/2007, at 6. On May 23, 2004, Tenant's husband died after a long battle with cancer. *Id.* at 125. After her husband's death Tenant received her first citation for a violation of the lease agreement. This citation dealt with housekeeping problems. The Authority worked with Tenant to improve the housekeeping problems, and she was not evicted at that time. *Id.* at 12, 125. She did not receive any official citations in 2005, although Javier Torres, a maintenance employee for the Authority, testified the housekeeping problems persisted throughout that year. *Id.* at 59, 60.

¶ 5 In March, 2006, while preparing for an upcoming inspection, Tenant had a mental "breakdown" and was admitted to Philhaven Hospital. According to Tenant, her admission to Philhaven and release to her daughter's home came just before the April 12, 2006 inspection. *Id.* at 128–129. Because of various violations of the lease dealing with poor housekeeping which resulted in a fire hazard,[6] Tenant failed the inspection and received a Notice to Quit dated April 27, 2006. At an informal hearing on May 18, 2006, Tenant indicated she was "progressing in her depression," and in light of the circumstances,[7] the hearing officer asked the Authority to take Tenant through her apartment and explain what needed improved before a re-inspection on May 30, 2006. N.T., 1/17/2007, at 17–18. The Authority cancelled the meeting scheduled for May 22, 2006, and Tenant could not attend the suggested make-up dates, in part because she was co-planning a memorial service for her husband. N.T., 5/14/2007, at 138. Although some progress

had been made by the May 30, 2006 inspection, Tenant ultimately failed this inspection. *Id.* at 34–35, 139–140.

¶ 6 On July 10, 2006, the date scheduled for the eviction proceeding before a magisterial district judge (district judge), Tenant's newly retained counsel served a request for a reasonable accommodation upon the Authority's counsel. *Id.* at 108. The hearing proceeded, and the district judge ruled in favor of the Authority and granted the requested eviction. Tenant timely appealed.

¶ 7 Between the time of the district judge's decision and the trial, Tenant provided follow-up documentation to the Authority to support her request for a reasonable accommodation because of her depression. The trial court, however, would not permit submission of any evidence beyond July 10, 2006. *Id.* at 82–83.

■ ¶ 8 The Act in relevant part reads: "It shall be unlawful to ... discriminate in the sale or rental, or to otherwise make unavailable or *deny*, a dwelling to any buyer or renter because of a handicap of ... that buyer or renter." 42 U.S.C. § 3604(f)(1)(A) (emphasis added). Federal case law has interpreted this section to mean that in determining whether or not the Authority discriminated against Tenant on the basis of handicap, the trial court should have accepted evidence up until the date of the trial. *Douglas,* 884 A.2d at 1121. "In assessing whether and when [the Authority] knew of [the tenant's] handicap, the court should have considered the date [the tenant] was actually evicted ... as the FHA provides that unlawful

---

6. Among other violations, Tenant stored flammable containers next to a pilot-lit water heater and stored materials on top of her stove. N.T., 5/14/2007, at 16, 23–24, 34, 53, 61, 63.

7. Tenant's grandson lived with her. He had been in trouble with the juvenile court. In addition to the stress of caring for the troubled grandson, Tenant was paying her grandson's court fees. *Id.* at 41.

discrimination occurs when a dwelling is denied." *Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir., 1997). Because Tenant had not been "actually evicted" at the time of trial, the trial court should have considered evidence up until the date of the trial.

■ ¶ 9 Tenant requested a reasonable accommodation on July 10, 2006, and the trial did not occur until May 14, 2007.[8] The letter to the Authority requesting the accommodation in relevant part provides:

> We are requesting on behalf of Ms. Landeck that you make a reasonable accommodation in your rules, policies or practices pursuant to the requirements of the Fair Housing Amendments Act (42 U.S.C. 3601–3619) as Ms. Landeck suffers from a mental disability.... We can discuss the specific accommodation that we are requesting in more detail, however, we would request that you withdraw the eviction action that is currently pending against Ms. Landeck. We believe that since Ms. Landeck now has a support system in place with the help of Family Based Therapy, specifically Dr. Abraham, and after a more detailed discussion with you about what exactly needs to be improved in the housekeeping area, Ms. Landeck will have the ability to achieve and maintain

the housekeeping standards that you require.

Exhibit 13.[9]

¶ 10 Tenant did make a reasonable accommodation request and the type of accommodation she requested is clear. Tenant was requesting a stay in the eviction process while she received assistance from Family Based Therapy to aid in resolving the housekeeping issues. She also requested the Authority tell her exactly what needed done in her apartment to meet its requirements.

■ ¶ 11 If, as the Authority asserts, it was unclear about what accommodation was being requested, it had a duty to "promptly respond" to the Tenant's request. *Douglas*, 884 A.2d at 1122. The *Douglas* court explains:

> If the request is not sufficiently detailed to reveal the nature of that request, the Act-as properly interpreted-requires the landlord to 'open a dialogue' with the tenant, eliciting more information as needed, to determine what specifics the tenant has in mind and whether such accommodation would, in fact, be reasonable under the circumstances.

*Id.*

As mentioned previously, the trial court erroneously did not permit evidence of the Authority's knowledge beyond July, 10, 2006,[10] but even the evidence before July

---

8. The trial began January 17, 2007, but was continued for the parties to complete discovery.

9. The exhibits have not been provided to this Court, however, *see N.T.*, 5/14/2007, at 107–108. *See also* the Authority's Answer to New Matter where it admits receipt of the July 10, 2006 letter.

10. The Authority in its Answer to New Matter admits Tenant's New Matter paragraphs 14–16, 18. Paragraph 14 incorporates a July 7, 2006 letter from Dr. Abraham, Family Based Therapist to the Authority that Dr. Abraham had been assisting Tenant with her "depres-

sive episodes" and helping her cope with difficulties including "general housework." The July 7, 2006 letter was delivered July 10, 2006. Paragraph 15 incorporates a letter dated July 13, 2006 from Michael Seifert in which he explains the Tenant suffered from depression "which may have inhibited her ability to properly perform general activities of daily living, including but not limited to, general housekeeping duties." Paragraph 16 incorporates the July 10, 2006 letter requesting the reasonable accommodation. And, paragraph 18 states,

> On July 24, 2006, Defendant's counsel in a letter to Plaintiff's counsel requested that

indicated the Authority knew or should have known of Tenant's disability.

¶ 12 At least, by the July 10, 2006 request, the Authority should have perceived Tenant as having a handicap. A "tenant suffers a 'handicap,' for purposes of establishing a prima facie case, if the landlord merely perceives or regards the tenant as having a handicap-whether she has one in fact or not-and then discriminates (including refusal to make a reasonable accommodation) solely on the basis of that unconfirmed perception." *Id.* at 1132 n. 53 (citations omitted). As early as 2004, Cynthia Riveria, Assistant Manager for the Authority, knew of Tenant's depression after her husband had died from cancer. At trial, the following exchange occurred after Ms. Riveria acknowledged Tenant's husband's death:

> Tenant's Counsel: And what else, during 2004 or 2005 or 2006, lead you to the conclusion that, yes, you knew she was depressed?
>
> Riveria: Well, she had financial problems, so I know she was looking for a job at one point. She also had problems with her grandson, because he was trouble for her.

N.T., 5/14/2007, at 41.

¶ 13 At the informal hearing on May 18, 2006, although Tenant did not explain that she thought her disability prevented her from being able to meet her housekeeping requirements, she did explain that she had been treated for depression and was taking antidepressants. *Id.* at 18.

¶ 14 In an un-counseled letter received by the Authority on June 9, 2006, Tenant explained, "Please be aware that I am progressing regarding the post-traumatic depression, and any added stress will definitely damage my health. . . . I am positive about my ability to continue maintaining a very satisfactory mode of housekeeping up to your standards." N.T., 1/17/2007, at 30. The Authority uses this letter to argue it had no knowledge that an alleged disability impaired her housekeeping abilities. But, this letter, in the context of other evidence, including the July 10, 2006 request for a reasonable accommodation, meant the Authority knew or should have known of Tenant's alleged disability before May 14, 2007, the final date of the trial.

¶ 15 As set forth above, an Authority representative acknowledged she was aware of Tenant's depression as early as 2004. On May 18, 2006, at the informal hearing, Tenant explained she was being treated for depression. In a letter received by the Authority on June 9, 2006, she again referenced her depression. The July 10, 2006 request for a reasonable accommodation referenced Tenant's mental disability. And, also on July 10, 2006, Tenant provided the Authority with Dr. Abraham's July 7, 2006 letter. In considering the aggregate evidence of Tenant's depression, on and before July 10, 2006, the Authority should have perceived Tenant suffered from a handicap, *i.e.,* depression. The trial court's finding that "the Authority had no knowledge of [Tenant's] alleged disability and that [Tenant] did not

plaintiff reconsider the denial of Defendant's request for a reasonable accommodation and that a representative of Plaintiff Housing Authority come to the Defendant's residence at a mutually convenient time when Defendant and Dr. Abraham, her Family Based Therapist could be present, to point out any deficiencies in the condition of her unit relating to housekeeping that

Plaintiff feels need to be corrected. Although requested to do so, neither Plaintiff's counsel, nor Plaintiff responded to such request.
Answer and New Matter, filed 9/27/06, ¶ 18. In its Answer to Matter, the Authority admits receiving these letters, and admits notice of Tenant's disability in July, 2006. Answer to New Matter at 2, ¶ 20.

request a reasonable accommodation" is unsupported by the record.[11]

 ¶ 16 The trial court also erred as a matter of law when it did not permit Michael Seifert (Seifert) to testify about his knowledge of Tenant's disability. The Authority objected to his testimony on the grounds Seifert could not be qualified as an expert and could not diagnose depression. However, even lay persons can testify about mental illness for purposes of demonstrating the need for a reasonable accommodation. *Douglas*, 884 A.2d at 1129–1131. Accordingly, the trial court erroneously sustained the objection. N.T., 5/14/2007, at 73–76.

 ¶ 17 The trial court also erred as a matter of law when it did not permit Dr. Joseph Abraham to testify about Tenant's disability because Tenant's counsel neglected to attach a copy of the July 7, 2006 letter to the proposed witness list. N.T., 5/14/2007, at 92–93. *See also* the Proposed Witness List filed 2/20/2007. This ruling was an abuse of the trial court's discretion because although the failure to attach the letter may have been a technical failure to comply with a pre-trial order, the Authority had actual notice of the substance of the witness's proposed testimony because the witness had testified at the district court hearing and because the Authority had received a copy of the witness's July 7, 2006 letter. N.T., 5/14/2007, at 91–92. *See also* the Authority's Answer to New Matter where it admits receipt of the July 7, 2006 letter.

¶ 18 Tenant has established that she suffered from depression which is a "handicap" under the Fair Housing Act; that the Authority should have known of the handicap; that she requested a reasonable accommodation; and that the Authority refused to make the accommodation. To prevail under the Act, however, Tenant was also required to prove she was unable to maintain her unit as required by the terms of the lease because of her disability.[12] The trial court erroneously prevented Tenant from presenting evidence in support of this final prong of her defense when it refused to: (1) consider evidence beyond July 10, 2006, (2) permit Michael Seifert to testify about the Tenant's disability, and (3) permit Dr. Abraham from testifying because Tenant's counsel did not attach the July 7, 2006 letter to the proposed witness list.[13]

11. The Authority and the trial court point out that when Tenant entered the lease with the Authority in 1997, she did not notify them of her depression. This is irrelevant as the record reflects she did not become disabled from depression until 2004 after her husband's death.

12. Tenant also argues the trial court erred in concluding the Authority established its right to possession because the trial court: (1) failed to identify which provisions of the lease agreement were violated, (2) erroneously found the Authority presented substantial evidence that Tenant breached the lease, and (3) mischaracterized the evidence by finding that Tenant made "no change" in the unit conditions by the May 30, 2006 inspection. These arguments are meritless. The record is replete with evidence that Tenant violated the lease, by among other things, keeping flammable liquids near a pilot-lit water heater. Further, Tenant's unit shared walls in a row of nine other units. N.T., 5/14/2007, at 7, 13, 15–16, 23–24, 34, 52–58, 61–63. Even though, the trial court erred in finding "no change" had been made to the unit before the May 30, 2006 inspection, this error was harmless because the May 30, 2006 inspection failed nonetheless. Tenant breached the lease. The question is whether her disability caused her to breach the lease.

13. The Authority and trial court assert that because Tenant worked full-time and because she planned a memorial for her late husband, that she must not be depressed in such a way to prevent her from appropriately maintaining her unit. This is a leap in logic that the Authority and trial court would find a person

¶ 19 Accordingly we remand this case to the trial court for a new non-jury trial to permit Tenant to present evidence [14] in support of her assertion she was unable to satisfy the terms of the lease because of her handicap. If she proves her handicap caused the breach of the lease the Authority must produce rebuttal evidence that the requested accommodation was unreasonable before an eviction may be ordered. *Id.*, 884 A.2d at 1135.[15]

¶ 20 Reversed and remanded in part. Jurisdiction relinquished.

¶ 21 McEWEN, P.J.E., files a concurring statement.

## CONCURRING STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the author of the majority opinion has, in his usual fashion, provided a persuasive and perceptive expression of view, I hasten to join in the decision of the majority to remand this case for a new trial.[1] However, in my view, the new trial should be conducted without limitation as to the issues or the defenses sought to be raised by the parties. Thus it is that I concur.

must *not* be depressed *because* she is planning a memorial service. Further, had all the evidence been properly presented, then the trial court could have ascertained whether the disability caused the breach in the lease.

14. This remand is not intended as an opportunity for Tenant to present new evidence that she had not attempted to admit at the first trial. Therefore, unless Tenant has been prejudiced by the time lapse in this appeal, for example, if a witness who would have testified previously is no longer available, Tenant should only present that evidence erroneously prohibited before by the trial court.

15. By this ruling, we do not preclude the Authority from making appropriate objections to any post July 10, 2006 evidence or witness testimony.

1. Pennsylvania Rule of Civil Procedure 1007.1 provides in relevant part:

 In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing.

 Pa.R.C.P. 1007.1(a). Since appellant here did not seek a jury trial in accordance with Rule 1007.1(a), and, in fact, appellee specifically sought and was granted a non-jury trial, I agree with the decision of the majority that, upon remand, the trial shall be conducted non-jury.