J-A22033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BROOKSIDE APARTMENTS REALTY, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL HEILMAN AND KYLE HEILMAN, | |
| Appellants | No. 83 MDA 2015 |

Appeal from the Order Entered December 18, 2014
in the Court of Common Pleas of Lebanon County
Civil Division at No.: 2014-01069

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 04, 2015**

Appellants, Michael and Kyle Heilman, appeal from the order, after a bench trial, granting Appellee, Brookside Apartments Realty, LLC,[1] possession of their apartment in this landlord/tenant dispute. Appellants assert that the eviction is discriminatory because Appellee denied their reasonable accommodation requests. We conclude that the record supports the trial court's decision that Appellants failed to establish a reasonable accommodation defense. Despite numerous accommodations by Appellee, Appellants repeatedly breached their lease as well as the "house rules" of the apartment complex. Accordingly, we affirm.

———————————————————————

[*] Retired Senior Judge assigned to the Superior Court.

[1] We have amended the caption to restore the full legal name of Appellee.

We take our facts and procedural history from the opinion of the trial court and our independent review of the record.

Appellee Brookside operates an apartment complex which leases Section Eight housing.[2] (**See** Trial Court Opinion, 3/05/15, at 2). Kimberly Ozella is the community manager for Brookside. Appellants Michael and Kyle Heilman are father and son. (**See id.**). Both receive social security disability payments. (**See** N.T. Trial, 12/16/14, at 61, 63). Appellants rent an apartment from Appellee. Michael pays $227 a month for the two bedroom apartment, out of his social security disability payment. The remainder of the rent is subsidized by the United States Department of Housing and Urban Development (HUD). (**See id.** at 60; **see also** Appellants' Brief, at 6). Michael has lived at Brookside for over twenty-years, although not all in the same apartment. The current lease is dated December 1, 2008. The lease provided for an initial term of one year. After that, the lease continued on a month-to-month basis.

At trial, Michael, fifty-four, testified that he has a spinal injury, breathes with the assistance of a medical oxygen apparatus, and has tumors in his thyroid and right lung. (**See** N.T. Trial, 12/16/14, at 61). He has chronic pain. (**See id.** at 62).

---

[2] Section 8 of the United States Housing Act of 1937, provides housing at reduced costs to low income families. **See** 42 U.S.C.A. § 1437-§ 1437k.

Kyle, twenty-five, suffers from a learning disability. (*See* Trial Ct. Op., at 8). Besides his comprehension problems he has physical pain from a childhood leg fracture, apparently aggravated by an excessive weight problem. (*See id.* at 8-9). Nevertheless, both Michael and Kyle testified that Kyle is able to pick up clothing off the floor, take out the trash, put food back in the refrigerator, and wash dishes in the sink; he vacuums "practically every day." (*Id.* at 8) (quoting N.T. Trial, at 76; *see also id.* at 75-76, 85). Michael testified that both he and Kyle worked really hard to clean up. (*See* N.T. Trial, at 66). Ms. Ozella, the Brookside manager, and Appellant Michael each testified that she is aware that both Appellants have disabilities. (*See* N.T. Trial, at 49, 63; *see also* Trial Ct. Op., at 7).

On April 16, 2014, Appellee served a notice on Appellants to vacate within thirty days. The notice identified thirty-two separate violations of the lease and apartment house rules, dating back to 2000 and up to March of 2014.[3] The majority involved failed housekeeping inspections. These violations included storage of garbage on the balcony, causing an odor and attracting insect infestations, and verbal abusiveness to property management staff. (*See* Trial Ct. Op., at 3-5). The court noted that Ms. Ozella testified that Michael verbally abused her from his balcony, calling her

---

[3] Although there were undisputed violations prior to 2000, they were not included in the current notice to vacate. (*See* N.T. Trial, at 12; Trial Ct. Op., at 4).

- 3 -

a "bully" and an "asshole" in front of her staff as well as other tenants. (***Id.*** at 5; ***see also*** N.T. Trial, at 23).

The infractions also included non-payment of rent, City of Lebanon code violations, failure to cooperate with recertification, refusal to permit entry to property management for inspection, refusal (by threats) to permit the entry of contractors for carpet installation, loose storage of firearms and ammunition (and, apparently, gun powder), and the prohibited storage of a flammable liquid in a gas can on the balcony. (***See*** Trial Ct. Op., at 3-4).

On the afternoon before the scheduled eviction proceeding in magisterial district court, counsel for Appellants faxed Appellee's community manager, Ms. Ozella, a request that the complaint be withdrawn and the eviction stayed, and asking for "a reasonable accommodation for housekeeping issues." (Appellants' Brief, Appendix A, Letter from Jillian Copeland, Esq., MidPenn Legal Services, to Kimberly E. Ozella, Community Manager, Brookside Apartments, 5/27/14, at unnumbered page 2). Aside from the request to discontinue the eviction action, the request for a reasonable accommodation consisted essentially of a proposal for a procedure of itemized inspections and re-inspections. (***See id.***).

Ms. Ozella gave the letter to counsel for Appellee, who responded the same day. In her faxed reply, counsel declined to withdraw the eviction complaint, noting, *inter alia*, that the apartment had been condemned by the City of Lebanon, and that Ms. Ozella had already attempted, repeatedly, to

assist Appellants in the past. (**See *id.*** at Appendix B, Letter from Magdalene C. Zeppos, Esq. to Jillian Copeland, Esq., 5/27/14).

For example, she gave them a couch and a lockable cabinet for their firearms, helped them arrange outside help to clean up, and made at least two offers to move Appellants without charge to a new apartment, both refused. (**See *id.***). The record supports (and notwithstanding some generalized denials, Appellants do not substantially dispute) the finding that despite past promises to reform, they eventually repeated their prior behavior and committed the same or similar violations. (**See e.g.**, N.T. Trial, at 45; 64, 71-72, 76).

The magisterial district court found in favor of Appellee. (**See** Notice of Judgment, **Brookside Apts. v. Heilman**, 6/06/14). Appellants appealed to common pleas court. While serving a copy of the notice of appeal, counsel for Appellants renewed the request for a reasonable accommodation, again outlining a scheme of inspection, itemization and re-inspection. This time counsel added a request for a new apartment. (**See** Appellants' Brief, at Appendix C, Letter from Jillian Copeland, Esq., to Magdalene C. Zeppos, Esq., 6/06/14, at unnumbered page 2).

After a bench trial on December 16, 2014, the trial court awarded judgment in favor of Appellee. (**See** Order, 12/18/14). Notably, on the relations between Ms. Ozella and Appellant Michael, the trial court found the testimony of Ms. Ozella to be credible, and the testimony of Appellant

Michael, not. (**See** N.T. Trial, at 125). Appellants did not file post-verdict motions. This timely appeal followed.[4]

On appeal, Appellants present three questions for our review:

1. Did the [c]ourt err as a matter of law by finding that [Appellants] are not entitled to a [r]easonable [a]ccommodation because there is no nexus between their disabilities and the housekeeping deficiencies alleged by [Appellee]?

2. Did the [c]ourt err as a matter of law by finding that [Appellee's] prior efforts to "accommodate" [Appellants'] housekeeping problems negated its obligation to respond to [Appellants'] [r]easonable [a]ccommodation requests of May 27, 2014 and June 6, 2014?

3. Did the [c]ourt err as a matter of law when it concluded that [Appellee's] duty to promptly respond to a [r]easonable [a]ccommodation request is only triggered if the requested accommodation is unclear?

(Appellants' Brief, at 4) (some capitalization omitted, internal quotation marks in original).

Appellants argue that they were twice denied a reasonable accommodation under 42 U.S.C.A. § 3604 of the federal Fair Housing Act, 42

---

[4] The trial court stayed the order to vacate, pending appeal. (**See** Order, 1/12/15). Professing an inability to discern the basis for the trial court's decision, Appellants' counsel filed a "general" statement of errors—which nevertheless included six separate claims of trial court error—on February 5, 2015. ([Appellants'] Statement of Errors, 2/05/15, at 1); **see also** Pa.R.A.P. 1925(b)(4)(vi). Appellants "reserve[d] the right [sic] to file an amended or supplemental [s]tatement as needed," but did not do so. ([Appellants'] Statement of Errors, 2/05/15, at 1). The trial court filed an opinion on March 5, 2015. **See** Pa.R.A.P. 1925(a).

U.S.C.A. §§ 3601-3619.[5] (**See** Appellants' Brief, at 10-11). They maintain that pursuit of eviction "[w]hen a tenant is entitled to a [r]easonable [a]ccommodation" is discriminatory and the termination of the lease is invalid "as a matter of law[,]" citing **Douglas v. Kriegsfeld Corp.**, 884 A.2d 1109, 1126 (D.C.C.A. 2005) (*en banc*).[6] (**Id.** at 11). They assert that there is substantial evidence in the record to show that that trial court failed to apply the law properly. (**See id.**). We disagree.

Our standard of review is well-settled:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law.

---

[5] The Fair Housing Act (FHA) is the short title for Title VIII of the Civil Rights Act of 1968. The Fair Housing Act was amended by the Fair Housing Amendments Act of 1988, § 6, 42 U.S.C.A. § 3604(f) (1994 & Supp. V 1999) (FHAA). Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals with disabilities in any program receiving federal financial assistance. **See** Rehabilitation Act of 1973 § 504, 29 U.S.C.A. § 794(a) (2000). For an academic discussion of reasonable accommodation issues, **see** Jennifer L. Dolak, The FHAA's Reasonable Accommodation & Direct Threat Provisions As Applied to Disabled Individuals Who Become Disruptive, Abusive, or Destructive in Their Housing Environment, 36 IND. L. REV. 759 (2003).

[6] **Douglas** was a divided decision from the District of Columbia Court of Appeals, with two judges joining the authoring judge, two judges concurring and four judges dissenting. **See Douglas**, **supra**, at 1144. In **Lebanon Cnty. Hous. Auth. v. Landeck**, 967 A.2d 1009, 1012 n.5 (Pa. Super. 2009), a panel of this Court, finding a lack of Pennsylvania authority, adopted (without further discussion or explanation) **Douglas**' five-prong test for a reasonable accommodation defense under the Fair Housing Act. The panel noted that the trial court had also applied the five prong test. The trial judge in **Landeck** is also the trial judge in this case. **See Landeck**, **supra** at 1009; (**see also** N.T. Trial, at 123; Appellee's Brief, at 6 n.1).

- 7 -

We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Landeck*, *supra* at 1012 (citation and quotation marks omitted).

In addition to Appellants' heavy reliance on **Douglas**, **supra**, and to a lesser extent, **Landeck**, we also note their frequent citation to cases from other state and federal jurisdictions as well.

At the outset we observe that it is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts. **See Trach v. Fellin**, 817 A.2d 1102, 1115 (Pa. Super. 2003), *appeal denied sub nom.* **Trach v. Thrift Drug, Inc.**, 577 Pa. 725, 847 A.2d 1288 (2004). "We recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." **Id.**

**Eckman v. Erie Ins. Exch.**, 21 A.3d 1203, 1207 (Pa. Super. 2011). Similarly, "we note that decisions rendered by the Commonwealth Court are not binding on this Court." **Beaston v. Ebersole**, 986 A.2d 876, 881 (Pa. Super. 2009) (citation omitted).

Here, Appellants' three questions all assign error "as a matter of law." (Appellants' Brief, at 4). To the extent the issues on appeal implicate

questions of law our standard of review is *de novo*, and our scope of review is plenary. **See Kripp v. Kripp**, 849 A.2d 1159, 1164 n.5 (Pa. 2004).

We further note that the **Douglas** court observed, "[w]e recognize that cases involving requests for 'reasonable accommodation' are '**highly fact-specific***,* **requiring case-by-case determination**[.]" **Douglas**, *supra* at 1121 (citations and footnote omitted) (emphasis added).

In this appeal we confirm from independent review of the record, and as asserted by Appellee, that Appellants failed to file post-trial motions.[7] (**See** Appellee's Brief, at 3, 4-5). Appellee maintains that Appellants thus waived all issues for appeal. (**See id.** at 5). We agree.

A litigant has ten days from a trial court's adjudication to file post-trial motions. **See** Pa.R.C.P. 227.1(c)(2); **see also Chalkey v. Roush**, 805 A.2d 491, 496 (Pa. 2002) ("Under Rule 227.1, a party must file post-trial motions

---

[7] Noting the failure to file post-trial motions, this Court issued an order directing Appellants to show cause why this appeal should not be quashed. (**See** Rule to Show Cause Order, 2/23/15). Appellants did not respond. Nevertheless, in consideration of the perceived possibility that post-trial motions were not required in this case under the provisions of Pa.R.A.P. 311(a)(2), (addressing attachments, custodianships, receiverships or similar matters), this Court *sua sponte* discharged the show cause order *per curiam* and referred the issue to this merits panel. (**See** Order, 3/25/15). We recognize that we could quash this appeal for lack of jurisdiction. **See Rappaport v. Stein**, 520 A.2d 480, 484 (Pa. Super 1987). However, in view of the evolving positions already taken by this Court, and in the interest of judicial economy, we decline to quash. Quashal would, in all likelihood, merely generate another round of appeals. Nevertheless, pursuant to the mandate of the referral order, we will consider the question of waiver. (**See** Order, 3/25/15).

at the conclusion of a trial **in any type of action** in order to preserve claims that the party wishes to raise on appeal.") (emphasis added); ***Lane Enter., Inc. v. L.B. Foster Co.***, 710 A.2d 54 (Pa. 1998) ("If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.").

In their reply brief, Appellants concede that the procedure employed by their counsel did not conform to the requirements of the Pennsylvania Rules of Civil Procedure. (***See*** Appellants' Reply Brief, at 10). Nonetheless, they assert that their filing of a court-ordered statement of errors under Pennsylvania Rule of Appellate Procedure 1925(b) "served the same function" as post-trial motions pursuant to Pa.R.C.P. 227.1(c)(2).[8] (***Id.***). We disagree.

Appellants cite no supporting authority for this claim of procedural equivalence. In fact, the only authority they cite at all on this issue is ***Coyne v. Cnty. of Allegheny***, 566 A.2d 378 (Cmwlth. Ct. 1989), a Commonwealth Court case not binding on this Court.[9] Notably, in ***Coyne***,

---

[8] We note the anomaly that counsel for Appellants purported to identify the trial court's errors only in general terms, because of a stated inability to discern the basis for the court's decision, (***see*** [Appellant's] Statement of Errors, 2/05/15, at 1), yet, on appeal, argues in effect that the general statement was sufficiently specific to serve as a substitute for post-trial motions.

[9] ***See Beaston***, ***supra*** at 881; ***see also Citizens' Ambulance Serv. Inc. v. Gateway Health Plan***, 806 A.2d 443, 447 (Pa. Super. 2002), *appeal denied*, 819 A.2d 546 (Pa. 2003) ("We note that while decisions of the
*(Footnote Continued Next Page)*

exceptions, treated by the trial court and accepted by the Commonwealth Court as post-trial motions, **were** filed, albeit eleven days late. **See id.** at 379.[10] The Commonwealth Court reasoned that "[b]ecause the trial court addressed the merits of the issue raised in the post-trial motion, it is preserved for appellate review." **Id.** at 380. Here, concededly, Appellants did not file post-trial motions at all.

In any event, our own caselaw leaves no doubt that Appellants' argument is erroneous. In **Diamond Reo Truck Co. v. Mid-Pac. Indus., Inc.**, 806 A.2d 423 (Pa. Super. 2002), this Court held that "the filing of a 1925(b) statement does not excuse the failure to file post-trial motions and does not revive or preserve issues that are waived for failure to file post-trial motions." **Id.** at 429.

Appellants acknowledge the holding in **Diamond Reo**, but attempt to distinguish it, based on the trial court's purported affirmance of its original order. (**See** Appellants' Reply Brief, at 8-9; **see also** Order, 3/05/15). In that transmittal order, forwarding the order, opinion, and certified record for

---

*(Footnote Continued)*

Commonwealth Court may be persuasive, they are not binding on this Court.") (citation omitted).

[10] Even more notably, the decision of the **Coyne** case in 1989 preceded **by thirteen years** our Supreme Court's establishment of an "unequivocal rule," applicable in both law and equity, to file post-trial motions in **Chalkey**, **supra**, in 2002. **Chalkey**, **supra** at 496. Appellants offer no argument why their unsupported analogy and a procedurally distinguishable Commonwealth Court case should prevail over the later express holding of our Supreme Court.

this Court's review, the trial court included language which on its face claimed to affirm its own prior order. ("[W]e hereby affirm our [o]rder dated December 16, 2014."). (Order, 3/05/15).

Appellants argue, in effect, that because the court reviewed its own decision, after consideration of the statement of errors, and affirmed, their statement of errors was the functional equivalent of post-trial motions. (**See** Appellants' Reply Brief, at 9). We disagree.

At the outset, we are constrained to acknowledge that the trial court's choice of language was inartful. Under Pennsylvania law, a trial court does not affirm its own decisions on appeal. Nevertheless, an objective reading of that imprecise phrase in total context confirms beyond serious objection that the trial court correctly understood its role to be one of explaining the reasons for its decision to this Court, pursuant to Pa.R.A.P. 1925(a). (**See** Trial Ct. Op., at 25: ("We now turn this case over to the Superior Court of Pennsylvania for review. We will enter an order consistent with the foregoing.")).

Furthermore, Appellants concede that the claim of trial court self-affirmance exceeds the authority provided by our Rules of Appellate Procedure. (**See** Appellants' Reply Brief, at 9) ("By specifically affirming its prior Order, the trial court stepped outside of the authority granted to it by the Rules of Appellate Procedure[.]"). Therefore, by their own reasoning and

admission, any such act by the trial court would be *ultra vires*, and a legal nullity.

Finally, on this issue, we note that Appellants' effort to distinguish **Diamond Reo** based on the self-affirmance argument is unsupported by reference to any caselaw, statutory or other authority whatsoever for its novel interpretation. Appellants' claim of an exception is unsupported and without merit. Accordingly, all of Appellants' issues are waived.

Nor would they merit relief on any other basis.

In their first claim, Appellants assert that the trial court erred "as a matter of law" by finding that there was no "nexus" between their disabilities and the housekeeping deficiencies identified by Appellee. (Appellants' Brief, at 4, 18). This claim does not present a reviewable issue.

Preliminarily, we observe that, in a rather meandering and unfocussed argument, Appellants fail to set forth where the trial court committed this asserted error. (**See** Appellants' Brief, at 18-27). Accordingly, they fail to comply with Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]"). Also, Appellants fail to set forth where their allegation of error was raised or preserved. (**See** Appellants' Brief, at 5-9); **see also** Pa.R.A.P. 2117(c), Pa.R.A.P. 2119(e).

- 13 -

On independent review, we find only a single passing reference to "nexus" by Appellants' counsel in her final argument. (N.T. Trial, at 118). Furthermore, Appellants failed to raise this claim in their Rule 1925(b) statement of errors. (**See** [Appellants'] Statement of Errors, 2/05/15 at 1-2). Consequently, the trial court did not address it. (**See** Trial Ct. Op, at 1-25). Appellants' claim would be waived for this reason as well. **See Cobbs v. SEPTA**, 985 A.2d 249, 256 (Pa. Super 2009) (holding issue not included in statement of errors is waived).[11]

Finally, on this claim, we note that on appeal Appellants fail to develop a "nexus" argument on the merits, supported by pertinent authority. (**See** Appellants' Brief, at 18-27). To the contrary, except for the initial statement of the claim, the word "nexus" never even appears in Appellants' first argument.[12] (**See id.**).

_____

[11] We recognize that Appellants' counsel filed a general statement of errors, pursuant to Pa.R.A.P. 1925(b)(4)(vi), claiming to be unable to discern the basis of the trial court's decision. It is true that the trial court did not explain its original order in an accompanying opinion. Nevertheless, counsel was able to raise six specific assertions of error. Counsel did not seek leave to file a supplemental statement after the court explained its reasoning in its Rule 1925(a) opinion. In fact, the trial court opinion never mentions "nexus." We therefore conclude that, in the totality of circumstances, counsel failed to take appropriate steps to raise and preserve the "nexus" issue, and the immunity from waiver provided at Pa.R.A.P. 1925(b)(4)(vii) does not apply.

[12] It does not appear in **Landeck** or **Douglas**, either.

Instead, Appellants assert, in effect, that they were entitled to a reasonable accommodation defense to eviction under the five-prong test announced in **Douglas** as adopted in **Landeck**:

> To establish a reasonable accommodation defense under the Fair Housing Act, the tenant must demonstrate that (1) she suffered from a handicap (or disability), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation.

**Landeck**, **supra** at 1012 (quoting **Douglas**, **supra** at 1129) (quotation marks omitted). (**See** Appellants' Brief, at 27) ("The fact that [Appellants] require assistance in order to clean their apartment and that this assistance is necessary because of their disabilities, is sufficient to meet the requirements of the third prong of the Reasonable Accommodation test.").

"No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116. The connection between a supposed "no nexus" determination and meeting the prongs of the **Douglas** test (which never even mentions "nexus") is not self-evident, and, we suspect, non-existent.

In any event, it is not the role of this Court to develop an argument for an appellant, or to scour the record to find evidence to support an argument. **See J.J. DeLuca Co. v. Toll Naval Assocs.**, 56 A.3d 402, 411 (Pa. Super. 2012). There is no justification in the rules for raising one question, and

then arguing another. Even if it were not already waived, Appellants' first claim would be waived for these reasons as well.

In their second claim, Appellants assign error to the trial court's purported finding that Appellee's prior efforts to accommodate their housekeeping problems "negated" its obligation to respond to their current reasonable accommodation requests. (Appellants' Brief, at 4).

Once again, Appellants' argument is meandering and unfocussed. (***See id.*** at 27-32). Once again, they fail to set forth where in the record the trial court committed the alleged error. And once again, they fail to reference the place in the record where their allegation of trial court error was raised or preserved. (***See id.*** at 5-9); ***see also*** Pa.R.A.P. 2117(c) ("**Statement of place of raising or preservation of issues.**"); Pa.R.A.P. 2119(e) ("**Statement of place of raising or preservation of issues.**").

Accordingly, Appellants have failed to show that they raised the second issue in the trial court. Therefore, it is waived for this reason, too. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Furthermore, Appellants failed to raise this claim in their Rule 1925(b) statement of errors. (***See*** [Appellants'] Statement of Errors, 2/05/15 at 1-2). Consequently, the trial court did not address it. (***See*** Trial Ct. Op, at 1-25). Appellants' claim would be waived for this reason as well. ***See Cobbs***,

*supra* at 256. For all these reasons, Appellants' second claim would be waived, even if it were not waived already.

Moreover, it would not merit relief.

Appellants concede their prior "bad acts" as tenants. (Appellants' Brief, at 30). They even concede that these acts might have warranted eviction "in other circumstances." (*Id.*). They do not dispute that there were other eviction procedures commenced against them in the past. (*See* N.T. Trial, at 25; *id.* at 124 ("numerous eviction notices")).

Nevertheless, they argue that the trial court's supposed finding that a past course of conduct "justifie[d] a refusal to act on a present request" was unsupported. (Appellants' Brief, at 32). They conclude Appellee committed "an obvious violation of the Fair Housing Act." (*Id.*). We disagree.

First, the trial court **never** ruled that past conduct "negated" Appellee's obligation to respond. In fact, the trial court correctly notes, and the record confirms, that Appellee, through counsel, **did** respond, promptly, on the same day, to their request. (*See* Trial Ct. Op., at 21, *see also* N.T. Trial, at 50). They responded no.

Secondly, Appellants offer no pertinent authority to support their claim that the trial court was obliged to ignore their past course of conduct. (*See* Appellants' Brief, at 27-32). To the contrary, the authority which they do present is inaccurately quoted and misleading.

Purporting to quote from ***Commonwealth v. Drumheller***, 808 A.2d 893 (Pa. 2002), *cert. denied*, 539 U.S. 919 (2003), Appellants suggest that evidence of their prior bad acts going back to 2000 should have been ruled inadmissible as too remote, "since 'remoteness relates not merely to the passage of time, but to the undermining of reasonable inferences due to the likelihood of supervening factors.'" (Appellants' Brief, at 30). This passage never appears in ***Drumheller***. What ***Drumheller*** actually said was:[13]

> In ***Commonwealth v. Ulatoski****,* 472 Pa. 53, 371 A.2d 186 (1977) . . . [t]he Commonwealth introduced evidence of the prior acts of abuse [bruises on the body of the decedent (the defendant's wife) as much as seventeen months before her death] to show that the death of the defendant's wife was more likely intentional than accidental. The defendant countered that this evidence was too remote in time to be relevant. We rejected the defendant's argument concluding that, although "the testimony may involve events so remote from the date of the crime that it has no probative value . . . no rigid rule can be formulated for determining when such evidence is no longer relevant." ***Id.*** at 191. In ***Commonwealth v. Petrakovich****,* 459 Pa. 511, 329 A.2d 844 (1974), we held that "[a]lthough evidence of (prior occurrences) which is too remote is not properly admissible . . . **it is generally true that remoteness** of the prior instances of hostility and strained relations affects the **weight** of that evidence and **not its admissibility**." ***Id.*** at 850 (emphasis added) (internal citation omitted); ***Ulatoski****,* 371 A.2d at 191.

***Drumheller***, ***supra*** at 905 (first emphasis added; second and third emphases added in the original). Not only do Appellants misquote ***Drumheller***, they mis-characterize its conclusion.

---

[13] In the interest of clarity, and to avoid the risk of confusion, we quote the pertinent passage substantially in full.

Overall, rather than develop their negation argument, Appellants abandon their second claim and instead argue that Appellee did not respond promptly to the request for a reasonable accommodation. (***See*** Appellants' Brief, at 28 (citing "undue delay" and failure to respond to second request)).

Appellants concede that Appellee, through counsel, refused to postpone the eviction proceeding. (***See id.***). However, they claim, in effect, that Appellee had some obligation to respond further. They conflate the refusal to respond further with an "obvious violation of the Fair Housing Act." (***Id.*** at 32).

Furthermore, Appellants offer no pertinent authority for their proposition that Appellee was prohibited from considering a prior, continuing course of conduct, repeated violations, promises to reform and failure to do so, in reaching its decision to pursue eviction (again). (***See id.*** at 29-32).

We conclude it was well within the discretion of the trial court to consider such evidence. As noted by the trial court, testimony at trial confirmed that Appellants were the subjects of numerous prior proceedings for eviction, which were apparently withdrawn or otherwise discontinued after they promised to reform their behavior. (***See*** Trial Ct. Op., at 19). The trial court further explained:

> Although the record indicates that [Appellee] did not grant the requests [for reasonable accommodation] in the letters [from Appellants' counsel], the record is replete with evidence that [Appellee] has attempted to accommodate [Appellants] for years prior to these letters. Many of the requests made in the letters were attempted in the past, but were unsuccessful. Ms. Ozella

- 19 -

testified that there was prior litigation involving a previous notice to quit where a previous manager came up with an agreement with [Appellants] that they were going to keep the apartment, they were going to come in on a timely manner for appointments, and they were going to correct some of the problems with their behavior. Ms. Ozella testified that this did not happen so she tried to work with them by taking a different approach when they failed an inspection with the City of Lebanon.

(*Id.*).

Appellants fail to show that Appellee was required to ignore their prior bad acts, promises, failures, and refusals to cooperate in the consideration of the current request for yet another accommodation. We conclude that there is no such obligation, even under federal law, *Douglas*, and *Landeck*. To the contrary, in *Douglas*, the majority supported its decision by noting:

Significantly, moreover, counsel for the tenant was unequivocal in conceding that if the requested delay, coupled with government intervention, "didn't work out"—meaning that if the apartment became filthy again (presumably because the government failed to continue its cleaning services on the tenant's behalf), the landlord would have an acknowledged remedy, eviction. According to counsel, **a reasonable accommodation, once given, need not be repeated if the tenant or her government protector failed to comply with its terms.**

*Douglas*, *supra* at 1117-18 (emphasis added).

Even *Douglas* recognized that the landlord's response to repeated requests for reasonable accommodations need not go on forever. Here, as the trial court observes: "The problem was not [Ms. Ozella's] accommodation; the problem was [Appellants'] follow through." (Trial Ct.

Op. at 10).  Appellants' second claim, even if it were not waived, would not merit relief.

In the third claim, Appellants assign error to the trial court for concluding that Appellee's duty to respond promptly to a request for reasonable accommodation is only triggered if the request is unclear.  (**See** Appellants' Brief, at 4).

Once again, Appellants fail to identify what ruling of the trial court they are objecting to, or where they raised and preserved this claim.  (**See** Appellants' Brief, at 32-37).  That said, the citation at issue is to an observation by the trial court in its Rule 1925(a) opinion.  (**See** Appellants' Brief, at 36 (citing Trial Ct. Op., at 21)).  The trial court correctly quotes a passage from **Douglas**, cited in **Landeck**:

> **If**, as the Authority asserts, it was **unclear** about what accommodation was being requested, it had a duty to "promptly respond" to the Tenant's request.  **Douglas**, 884 A.2d at 1122. The **Douglas** court explains:
>
> > **If the request is not sufficiently detailed** to reveal the nature of that request, the Act-as properly interpreted- requires the landlord to '**open a dialogue**' with the tenant, eliciting more information as needed, to determine what specifics the tenant has in mind and whether such accommodation would, in fact, be reasonable under the circumstances.
>
> **Id.**

**Landeck**, **supra** at 1014 (emphases added).

Here, simply stated, Appellee (or its agent, Ms. Ozella, or counsel) never claimed **not** to understand the accommodations Appellants were

requesting. And it **did** respond promptly—by refusing to halt the eviction process yet another time. Therefore, there was no need, under **Landeck** or **Douglas**, to open a dialogue to elicit more information.

The "open a dialogue" issue only arose in **Douglas** because the appellee in that case claimed as a defense that the request letter was too vague. **See Douglas**, **supra** at 1124. In this case, misunderstanding of the accommodations requested is not at issue. Appellee understood what Appellants wanted. Appellants' reliance on **Douglas** for their "open a dialogue" argument is misplaced, lacks any other pertinent support, and would fail on the merits, even if not waived.

We conclude that the trial court correctly ascertained the plain meaning of the authority cited. Appellee had no duty to open a dialogue if it understood what the request for accommodation was. It responded promptly and unequivocally the first time to the request.

Appellants concede that a request for accommodation is not reasonable if it would impose an undue financial or administrative burden on the housing provider, or if it would fundamentally alter the nature of the provider's operations. (**See** Appellants' Brief, at 33-34); **accord**, **Douglas**, **supra** at 1120. We conclude that the record supports the trial court's finding, which accepted the testimony of Ms. Ozella, that dealing with Appellants' recurring violations posed serious difficulties for her management of the complex. (**See** N.T. Trial, at 124).

Appellants assert that they cleaned up their apartment after the eviction notice, correcting many of the housekeeping violations previously cited. They also reduced clutter by moving some of their belongings to offsite storage, with the help of Michael's sister. They appear to argue that this obligated Appellee to "open a dialogue" after the second request. (**See** Appellants' Brief, at 32-37). We disagree.

First, Appellants offer no pertinent authority for their specific claim. Secondly, they offer no argument that their clean-up efforts responded to the numerous non-housekeeping violations. Instead, they maintain that any questions about their ability to comply with the non-housekeeping requirements required opening another dialogue.

Conspicuously missing from this argument, and the evidence at trial, in stark contrast to **Douglas** and **Landeck**, is any showing that Appellants sought to address the problems in compliance associated with their respective disabilities, or that they had assembled a network of professional support to assist them, not just sporadically, but in an ongoing effort to meet their lease and "house rules" obligations.

Instead, as noted by the trial court, and supported by the record, Appellants would repeatedly fail to comply with basic lease requirements, and ignore notice violations until the threat of eviction loomed and they saw the light. (**See** N.T. Trial, at 124, 126). Then they would "[get] serious," obtain extra help, resolve the problem and avert eviction. (**Id.** at 124).

However, the evidence of record supports the inference that the help, if it came at all, was more in the nature of a one-time clean-up, not a long-term solution. Once a crisis abated, Appellants would eventually let things slide, until the whole process repeated itself. Except for a brief indication that Kyle was working with a youth services agency, there was no showing of any provision for ongoing comprehensive support.[14]

This is not a situation where the reasonable accommodation requested is a specific concession which will directly respond to a specific need arising out of a disability, such as access to a handicapped parking space, permission to maintain an assistance animal in a "no pets" apartment, installation of guard rails, or assignment of a ground level apartment to facilitate wheelchair access, or the like. Rather, Appellants seek a sort of *de facto* general amnesty from their long history of housekeeping and other violations, and *carte blanche* acquiescence to start the process all over again. Even **Douglas** does not require that.

Cases involving requests for reasonable accommodation are highly fact-specific, requiring case-by-case determination. **See Douglas**, **supra** at 1121. On independent review, we determine that the findings of the trial

_____

[14] For example, in a brief unsupported reference, Appellants cited approval for twelve hours of housekeeping services through the Lebanon County Office of Mental Health. (**See** Appellants' Brief, at 17). However, Appellants do not explain what would happen when the twelve hour commitment was exhausted.

court are supported by competent evidence. Credibility determinations were for the factfinder. We will not substitute our judgment for that of the trial court. We discern no error in the trial court's application of law.

The test we apply is whether, after due consideration of the evidence which the trial court found credible, the trial court could have reasonably reached its conclusion. We conclude it could, and we decline to disturb its verdict. **See Landeck**, **supra** at 1012. Appellants' claims are waived and would not merit relief.

Order affirmed.

Judge Bowes joins the Memorandum.

Judge Jenkins files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2015