J-A28044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HEATH N. KAHRS AND MARCIE KAHRS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| A.M. BRADY STUCCO & STONE, LLC A/K/A AIDAN BRADY STUCCO & STONE AND ENVIRONSPEC, LTD. AND MARK LEZANIC AND SANDRA LEZANIC, | |
| Appellees | No. 984 EDA 2016 |

Appeal from the Judgment Entered May 10, 2016
in the Court of Common Pleas of Chester County
Civil Division at No.: 10322-C 13

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED DECEMBER 12, 2016**

Appellants, Heath and Marcie Kahrs, husband and wife, appeal from a jury verdict in their favor in the amount of $166,010.00, which they consider inadequate, and a bench trial judgment denying their assertion of violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1]  Their complaint chiefly claimed various failures by A.M. Brady Stucco & Stone, LLC a/k/a Aidan Brady Stucco & Stone (Brady), and Environspec, Ltd. (Environspec) (Appellees), and Mark and Sandra Lezanic, to repair moisture

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 73 P.S. §§ 201-1 — 201-9.3.

penetration and leakage behind the stucco exterior of their home.[2] Besides their common law claims, Appellants alleged breach of contract, negligence, and deceptive practices in violation of the UTPCPL. We affirm.

We derive the pertinent facts of the case from the findings of the trial court and our independent review of the certified record.

The ongoing course of conduct among the principals of this case is prolonged and convoluted. Briefly summarized, a pre-sale inspection report, (the Cogent report), identified water penetration behind the stucco of the house Appellants wanted to buy. As part of the agreement of sale, Appellants entered into a pre-sale arrangement with the Lezanics, the sellers, for the remediation of the leakage. (*See* Decision Pursuant to Pa.R.C.P. 1038, 2/02/16, at 2).

The Lezanics (not the Kahrs) engaged Brady to make the necessary repairs, to be paid out of an escrow account from the proceeds of the sale of the house. Brady expressly provided in the agreement that "you" (the Lezanics) would be responsible for the removal and reinstallation of any windows which needed to be removed to correct the water penetration.

Shortly before the sale was scheduled to close (on January 15, 2010), the Kahrs sent Brady a letter regarding the completion of the remaining

---

[2] The trial court sustained preliminary objections in favor of Mr. and Mrs. Lezanic, sellers of the home Appellants purchased. They are not parties to this appeal.

stucco services. (*See* Complaint, 1/27/14, Exhibit "D", Letter to Aidan Brady, 1/13/10). The letter specified — twice — that it was intended to serve merely as a "clarification" of the original agreement. (*Id.* at 1) ("Note—these services **do not supersede the original scope of services**. They [sic] merely serve as additional clarification and understanding.") (emphasis added). The Kahrs signed the letter, as did Brady. (*See id.* at 3).

The Kahrs maintain that a major issue at the trial was whether the windows needed to be removed, and who had responsibility for the removal. (*See* Appellants' Brief, at 35). One can reasonably infer from the totality of the evidence that removal and reinstallation of windows was a critical component of the remediation process. The Kahrs also maintain that it was Brady's and Environspec's responsibility to determine if the windows needed to be removed, and both failed to advise them (the Kahrs) of this requirement. (*See id.*).

In any event, things proceeded without further serious incident from the completion of the original services in 2010, until Hurricane Sandy hit in 2012, when water leaked into the basement, apparently from a kitchen window. Appellants summoned Brady, who agreed to perform corrective remedial work (at no additional cost to the Kahrs) under the warranty for the original work. For a fee of $600.00 Mr. Kahrs also engaged Appellee Environspec to perform five inspections of Brady's work. Environspec found

minor problems, which Brady addressed, but its final report indicated that the stucco looked good and noted no major concerns. (*See* Decision Pursuant to Pa.R.C.P. 1038, at 5; *see also* Opinion Pursuant to Rule 1925, 5/06/16, at 6).

However, before the work was completed, Mr. Kahrs ordered Brady and his work crew off the premises and instructed him not to return. This lawsuit followed.

The trial court bifurcated the proceedings into a bench trial on Appellants' UTPCPL claims and a jury trial on the other claims. The trial court denied Appellants' UTPCPL claims. The jury found a breach of contract by Brady and awarded the Kahrs $166,010.00. This appeal followed the denial of the Kahrs' post-trial motions. Counsel for Appellants filed a non-compliant statement of errors on April 19, 2016. *See* Pa.R.A.P. 1925(b)(4)(iv).[3] The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on May 6, 2016.[4]

---

[3] In disregard of the pertinent rule, counsel for Appellants provides a lengthy explanation of each purported error asserted. (*See* Appellants' Brief, Appendix C, "Statement of the Matters [sic] Complained of on Appeal Pursuant to Order of Court Dated March 29, 2016 and Pa.R.A.P. 1925(b)," at 1-11; *see also* Pa.R.A.P. 1925(b)(4)(iv) ("The Statement should not be redundant or provide lengthy explanations as to any error.").

[4] Among other procedural lapses, counsel for Appellants omits a copy of the trial court's Rule 1925(a) opinion in their brief. *See* Pa.R.A.P. 2111(a)(10), (b). Both Appellees included a copy of the opinion in their briefs.

Appellants raise **sixteen** claims on appeal, framed as ten questions and six over-lapping sub-questions:

1. Whether the [t]rial [c]ourt's decision on the Kahrs' UTPCPL claim was contrary to the weight of the evidence and the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in reaching this decision?

2. Whether the [t]rial [c]ourt erred and/or abused its discretion in failing to mold the verdict or grant additur with respect to the undisputed evidence of contract damages?

3. Whether the [t]rial [c]ourt erred and/or abused its discretion in failing to grant judgment notwithstanding the verdict as to damages with respect to the undisputed evidence of contract damages?

4. Whether the jury verdict as to liability and damages was contrary to the weight of the evidence and the [t]rial [c]ourt erred in failing to grant [Appellants'] motion for new trial?

5. Whether the [t]rial [c]ourt erred and/or abused its discretion in failing to grant [Appellants] a new trial on the following errors of law:

   1.) the finding of deception was not submitted to the jury and evidence related to deception was not permitted at the jury trial;

   2.) [Appellants] were prohibited from presenting their negligence claim to the jury when Counts I and IV of the Complaint remained in the case prior to [Appellee] Brady's Motion for Compulsory Nonsuit;

   3.) the [t]rial [c]ourt erred in permitting witnesses to testify about the Cogent [r]eport, which constitutes impermissible hearsay;

   4.) Daniel Honig should not have been admitted as an expert as he had no experience in the field of stucco remediation;

5.) the [t]rial [c]ourt erred in not providing a copy of [Appellants'] Exhibit 35 to the jury as requested; and

6.) the [t]rial [c]ourt erred in finding in favor of [Appellees] on [Appellants'] UTPCPL claim?

6. Whether the [t]rial [c]ourt erred and/or abused its discretion in not permitting evidence of deception to be introduced at the jury trial and permitting the jury to make a finding as to whether the [Appellees'] conduct was deceptive in accordance with the [UTPCPL]?

7. Whether the [t]rial [c]ourt erred and/or abused its discretion in prohibiting [Appellants'] from presenting their negligence claim to the jury when Counts I and IV of the Complaint remained in the case prior to [Appellee] Brady's Motion for Compulsory Nonsuit?

8. Whether the [t]rial [c]ourt erred and/or abused its discretion in permitting witnesses to testify about the Cogent [r]eport, which constitutes impermissible hearsay?

9. Whether the [t]rial [c]ourt erred and/or abused its discretion in permitting Daniel Honig to be admitted as an expert when he had no experience in the field of stucco remediation?

10. Whether the [t]rial [c]ourt erred and/or abused its discretion when he [sic] refused to provide a copy of [Appellants'] Exhibit 35 to the jury after it was specifically requested by the jury?

(Appellants' Brief, at 4-5) (sub-questions re-formatted).

Preliminarily, we are reminded of the observation by the [late] Honorable Ruggero J. Aldisert, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, that this Court has previously cited in **Kenis v. Perini Corp.***,* 452 Pa. Super. 634, 682 A.2d 845 (1996), as well as other cases:

When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the

effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Id.* at 847 n.3 (citations omitted); *see also Commonwealth v. Snyder*, 870 A.2d 336, 340 (Pa. Super. 2005) ("[T]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them.") (citations omitted).

*J.J. DeLuca Co. Inc. v. Toll Naval Associates*, 56 A.3d 402, 409–10 (Pa. Super. 2012).

In this appeal, many of Appellants' issues and arguments in the sixty-three page brief overlap or simply duplicate each other by raising the same issue, sometimes in a virtually identical form, sometimes in a slightly alternative way. Also, the argument section of the brief reformats and re-orders the questions, in virtually random sequence, inconsistently numbered and lettered, without apparent distinction between questions and sub-questions. (*See* Appellants' Brief, at 11-62). In so doing, Appellants fail to comply with Pennsylvania Rule of Appellate Procedure 2119:

> **(a) General rule.** The argument shall be divided into **as many parts as there are questions to be argued;** and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (some emphasis added).

We could find all of Appellants' claims waived on this basis. But we decline to do so, on grounds of judicial economy. Notably, in addition to the briefs, oral argument has already occurred. Therefore, for clarity of analysis

and to avoid unnecessary duplication and further confusion, when appropriate we will address similar claims together.

We first address Appellants' challenges to the weight of the evidence for the trial court's verdict on the UTPCPL claims, and the jury verdict. We begin with our standard and scope of review in an appeal from a non-jury verdict.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.
>
> We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*DeLuca*, *supra* at 410 (citations and quotation marks omitted). Similarly,

> Where, as here, the appellant asserts the weight of the evidence as grounds for the award of a new trial, our review is exceptionally limited:
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **One of the least assailable reasons for**

**granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.**

It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 413 (Pa. Super. 2012), *appeal denied*, 72 A.3d 604 (Pa. 2013) (citations and internal quotation marks omitted; emphasis added).

Here, aside from the mere bald assertion that the verdicts shock the conscience, Appellants, in a rambling, disconnected, and frequently opaque presentation, simply fail to develop any persuasive argument that the finders of fact could not have reached their respective conclusions on the weight of the evidence presented. (*See* Appellants' Brief, at 23, 30-31, 42, 45-46). At most, Appellants invites us to an impermissible re-weighing of the evidence. We decline to do so.

Notably, while Appellants insist repeatedly that their evidence was "undisputed," Appellees maintain, and the trial court confirms, that Appellants' "damages were hotly contested." (Order 3/1/16, n.1 at 2; Rule 1925(a) opinion, 5/06/16, at 18). We will not substitute our judgment for that of the factfinders. We consider the evidence in the bench trial in a light most favorable to the Appellees as verdict winners. The trial court could

have reasonably reached its conclusion that the jury's verdict was supported by the evidence. All of Appellants' weight claims fail.

Next, Appellants claim a right to a jury trial on their UTPCPL claims. (**See** Appellants' Brief, at 11-14). This Court has concluded that there is no right to a jury trial for private causes of action under the UTPCPL. **See Fazio**, **supra**:

> Accordingly, we conclude that there is no right to a jury trial for private causes of action under the UTPCPL. The statute does not specifically enumerate that right. Moreover, based upon the foregoing analysis, we find that the UTPCPL did not merely codify common law claims of fraud. The UTPCPL created a distinct cause of action for consumer protection. While a plaintiff is required to prove elements of common law fraud to support certain UTPCPL claims, he/or she would still have to prove the elements of a consumer-based transaction or relationship. Moreover, fraud and UTPCPL claims have different statutes of limitations, which provides further support that such claims are separate causes of action. In sum, the Fazios were not entitled to a jury trial on their stand-alone UTPCPL claim; hence, their first issue on appeal fails.

**Id.** at 411–12.

Appellants' citation to caselaw preceding **Fazio** or to cases from other jurisdictions ignores the doctrine of stare decisis. **See Dixon v. GEICO**, 1 A.3d 921, 925-26 (Pa. Super. 2010). Appellants' assertion of a right to a jury trial for their UTPCPL claims fails.

Next, we address Appellants' challenge to the jury's award of damages. They maintain they are entitled to $302,286.00, instead of $166,010.00. (**See** Appellants' Brief, at 42). We disagree.

Where an appellant's claim arises from a challenge to the jury's determination of damages, our review is highly circumspect:

The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.

If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

***Helpin v. Trustees of Univ. of Pennsylvania***, 969 A.2d 601, 616 n.9 (Pa. Super. 2009), *affirmed*, 10 A.3d 267 (Pa. 2010) (citations and internal quotation marks omitted).

Here, as previously noted, Appellants' claim that their evidence of damages was undisputed is flatly contradicted by the trial court. We defer to the trial court on findings of fact. The trial court notes that the jury's award of damages is nearly four times the original contract amount. (***See*** Rule 1925(a) opinion, at 6). There is no evidence that the jury acted out of caprice, prejudice, partiality, corruption or some other improper influence. We decline to disturb the jury's award. Appellants' claims to additional damages fail.

Next, Appellants challenge the trial court's denial of their request to provide the jurors during deliberations with an exhibit (Exhibit 35) prepared by their counsel, which purported to itemize their various claims to

damages. (**See** Appellants' Brief, at 48-52). Appellants maintain that the trial court's refusal constituted an error "as a matter of law." (**Id.** at 51). We disagree.

Pennsylvania Rule of Civil Procedure 223.1, Conduct of the Trial, provides, in pertinent part, that "[t]he court **may** . . . make exhibits available to the jury during its deliberations[.]" Pa.R.C.P. 223.1(d)(3) (emphasis added). However, this Court has long held that "whether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." **Commonwealth v. Manley**, 985 A.2d 256, 273 (Pa. Super. 2009), appeal denied, 996 A.2d 491 (Pa. 2010) (citations omitted).

In this case, the trial court notes that there were two versions of the exhibit at issue, raising potential questions as to which version was more accurate (or which should be provided to the jury). It is undisputed that both versions contained one or more items now conceded to be beyond the scope of permissible damages to be determined by the jury (e.g., premiums for Appellants' homeowner's insurance).

Appellants cite some courts of other jurisdictions (whose decisions are not binding on this Court), to the effect that they **may** have permitted demonstrative exhibits during jury deliberations. This is of no moment for our review. Appellants had the burden to prove that **this** trial court's

decision **not** to provide the compromised exhibits was an abuse of discretion, or, as Appellants claim, an error "as a matter of law." (Appellants' Brief, at 51, 52). They utterly fail to do so. Appellants' challenge to the exclusion of Exhibit 35 from jury deliberations fails.

Appellants also object to various other evidentiary rulings by the trial court, most notably testimony with reference to the Cogent report,[5] and the trial court's acceptance of Daniel Honig as an expert witness for Brady.

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013) (citation and ellipsis omitted).

Appellants quote extensively, albeit selectively, from the trial transcript in support of their objections. (***See*** Appellants' Brief, at 15-23; 55-58). However, Appellants fail to develop an argument supported by specific pertinent authority to meet their burden of proof that the trial court abused its discretion or committed an error of law in any of its evidentiary rulings.

_____

[5] Appellants concede that the Cogent report was not entered into evidence. Nevertheless, they maintain that references at trial "constitutes irreversible [sic] error." (Appellants' Brief, at 23).

On independent review we conclude that none of Appellants' other claims, whether appropriately or inappropriately developed, merit additur, molding of the verdict, a new trial, or any other relief. In particular, Appellants were not entitled to present evidence of their purported pain and suffering at trial. As a practical matter, the gist of the action doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14–17 (Pa. Super. 2002). The trial court properly prevented Appellants from doing so.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2016